**In re Carlos J. RUIZ, Sara E. Ruiz, Debtors.**

**Bankruptcy No. 97–14937–FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Sept. 28, 1998.

Michael Baumer, Austin, TX, counsel for debtor.

Ray Hendren, Trustee, Austin, TX.

## MEMORANDUM OPINION— VALUATION OF PICKUP TRUCK

FRANK R. MONROE, Bankruptcy, Judge.

The Court held a hearing on September 1, 1998 at 10:00 a.m. on the Motion of Bell's Auto Sales for Valuation of Collateral. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), as it is a determination of the secured claim of the Movant under 11 U.S.C. § 506(a). As such, it is a matter which arises both under title 11 and in a case under title 11. Accordingly, this Court has jurisdiction to enter a final order under 28 U.S.C. § 1334(a)(b) and (d), 28 U.S.C. § 157(a) and (b)(1), 28 U.S.C. § 151, and the Standing Order of Reference from the United States District Court for the Western District of Texas.

### Statement of Facts

Debtors purchased a 1988 Chevrolet pickup from Movant in August 1997 for approximately $7,000.00. Debtors filed bankruptcy under Chapter 13 on December 31, 1997. Debtors valued the pickup truck in their plan at $2,087.00 by using the "blue book" retail value less a high mileage deduction. The pickup truck had approximately 150,000 miles on it on the petition date. This means that the pickup truck had been driven approximately 15,000 miles a year over its ten year life.[1]

All parties agreed the truck was in good condition. Movant testified that he, as a used car dealer/financier would be able to sell the pickup truck for $7,000.00, almost $1,000.00 more than the debt owing on the petition date of $6,089.94 and approximately the same value at which Movant sold the vehicle to the Debtors in August 1997.

### Legal Issue

What is the appropriate value of this vehicle under 11 U.S.C. § 506(a) in light of the Supreme Court's less than clear opinion in *Associates Commercial Corp. v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)?

### Legal Analysis

Query? Would the result in this case be any different under the Supreme Court's guidelines for the proper method of valuation of a truck in Chapter 13 under § 506(a) than if one used the opinion issued by the Fifth Circuit Court of Appeals in *Associates Commercial Corp. v. Rash (In re Rash),* 90 F.3d 1036 (5th Cir.1996), rev'd. —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)?

In *Rash,* the Honorable Don Sharp, U.S. Bankruptcy Judge, rejected Associate Commercial Corp.'s ("ACC") request to value the truck at current market value, which they defined as what it would cost the debtor to replace the vehicle if it were purchased at retail from a dealer and, instead, valued it at its wholesale value, which one writer describes as what a "dealer would pay to buy the truck from either the Rashes or ACC". Melissa A. Webber, *A Valuation Standard That Is Difficult to Swallow: Interpreting § 506(a) of the Bankruptcy Code in Associates Commercial Corp. v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). 20 Harv.J.L. & Pub. Pol'y 921, 923 (1997).

---

**1.** The Court questions the appropriateness of a high mileage discount on a ten-year old vehicle driven an average of 15,000 miles a year. A ten-year old vehicle should not, as a rule, be given a high mileage discount subject, of course, to the ever-existing exception.

The District Court affirmed Judge Sharp. The Fifth Circuit initially reversed. On rehearing en banc, the Fifth Circuit changed its position and affirmed Judge Sharp. Basically, the Fifth Circuit said that when the debtor is retaining property subject to a lien in a Chapter 13 case, that property should be valued at what the secured creditor would receive if it got its collateral back. The Fifth Circuit reasoned that giving the secured creditor any more than it would get by taking the collateral back would be an enhancement of its position to which it was not entitled under § 506(a), to the detriment of the unsecured creditors (or the debtor in the rare case of 100% Chapter 13 plan). Basically a foreclosure valuation standard was adopted.

Under the Fifth Circuit opinion this could make a big difference depending on who you are. If one is a lender whose only recourse is to sell the repossessed vehicle to a dealer, then clearly that lender is only going to receive wholesale value for its collateral. If one is a lender who has the ability to consign a vehicle with a dealer, one may get something more than wholesale. And, as in this case, if one is a dealer/financier, then one may well be able to receive retail upon repossession and reselling of the collateral. So how is that any different under the Supreme Court's opinion?

The Supreme Court said it was reversing the Fifth Circuit and in the text of its opinion stated that the collateral must be valued at its replacement value. Specifically the language was, "the price a willing buyer in the debtor's trade, business or situation would pay a willing seller to obtain property of a like age and condition." *Associates Commercial Corp. v. Rash,* —— U.S. —— at ——, 117 S.Ct. 1879 at 1884, 138 L.Ed.2d 148 (1997). It seems different from foreclosure value on its face; but is it really any different as applied in this case?

The Supreme Court went on to clarify its definition of replacement value by inserting footnote 6 into its opinion which states that "Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend upon the type of the debtor and the nature of the property." *Id.* at 1884 n. 6.

■ So, valuation is a case by case determination. We already knew that. And, the Supreme Court's *Rash* opinion really brings nothing new to the table. Why? Because replacement value, as explained by the Supreme Court, is not something that can be defined in and of itself. Indeed, the Supreme Court points out that in any particular case replacement value may be retail value, wholesale value, *or some other value* (perhaps even foreclosure value?).[2]

However, footnote 6 did not stop there. The Supreme Court clarified further: "For example, where the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may be necessary: A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning. See 90 F.3d at 1051–1052.[3] Nor should the creditor gain from modifications to the property—e.g., the addition of accessories to a vehicle—to which a creditor's lien would not extend under state law." *Id.*

■ The best way to make sense of this portion of footnote 6 is to analyze it piecemeal, to-wit: (1) if the debtor has a warranty on his vehicle, then that should be considered in determining replacement value; if he does not, it should not; (2) replacement value should be determined with regard to the present condition of the vehicle and not with regard to any "reconditioning" that a dealer might undertake in order to make the vehicle more saleable as well as more valuable; and (3) the secured creditor should not get the

2. It is this writer's opinion that the same is equally true for the "foreclosure" standard used by the Fifth Circuit. In any given situation, foreclosure value may equal retail, wholesale, or some other value. It just depends on the facts of the case.

3. Does this footnote apply when the proper value to apply is some value other than retail value? And, when, pray tell, is the proper time to use retail value, wholesale value, or some other value? The Supreme Court's opinion gives no direction at all.

benefit of accessories which may have been added by the debtor to which its lien does not extend. These are all self evident statements. But what is "inventory storage" doing in the list? Presumably, that is an overhead item such as rent, interest carry, etc. Why is it to be deleted "where the proper measure of the replacement cost of a vehicle is its retail value"? *Id.* How can retail value of a dealer *not* include the dealer's overhead? That's the way the dealer makes money. That's the way one gets to retail value. And, any dealer to whom any particular debtor would go to replace any vehicle would include those overhead items in the price. It's only if the debtor were able to replace the identical vehicle from another individual that items of overhead would not be appropriate to include.[4]

At any rate, in this case there is no warranty, there is no reconditioning required for the vehicle, and there is no evidence of any vehicle accessories to which this Movant's lien would not extend. Further, upon questioning by the Court, Movant was unable to provide any overhead percentage or dollar amount of "inventory storage" to affix to this or any other vehicle in his inventory. He testified he simply was not able to make that determination on the basis of the way he keeps his records.

So, here all we know is that Debtors feel the "blue book" value with a deduction for high mileage should be used even though the resulting number is $5,000.00 less than they paid for the vehicle four to five months earlier. That hardly seems right. How can a vehicle depreciate $5,000.00 in four to five months.

The Movant, on the other hand, testifies that he can sell the vehicle today for more than he is owed and would, therefore, not lose a penny. There is no other evidence as to replacement value in the record.

In accordance with the Supreme Court's decision, the relevant inquiry is what a willing buyer in the Debtors' situation would pay a willing seller to obtain a 1988 Chevrolet pickup of like condition. The Debtors' situation is that they are consumers who are using the pickup as transportation in normal everyday life. They have several sources from which to obtain a replacement vehicle. First, they could use the newspaper classified advertisements. But, there was no evidence of what this alternative would produce in the way of a replacement value. Second, they could go to an automobile auction. But, there was no evidence that the Debtors have the ability to go to such an auction or whether such a replacement vehicle would be available though such an auction. This leaves us only with the third alternative—a dealer. The Court concludes, therefore, that retail value is the proper "replacement" value to use in this case.

The more probative evidence in the record as to the retail price at which either a hypothetical or a existing dealer in the Austin area would sell a 1988 Chevrolet pickup of like condition to the Debtors is the testimony of the Movant. It is clear that if the Debtors wanted to replace the 1988 Chevrolet pickup with one of equal condition, they would have to pay at least as much as they owe this Movant.[5] The "blue book", itself, is only a guide. It is in no way definitive with regard to what the particular replacement value of the 1988 Chevrolet pickup truck was in the Austin market on the petition date. It is less probative of the issue.

Accordingly, the Court concludes that the replacement value of the Debtors' 1988 Chevrolet pickup truck is $7,000.00, an amount in excess of the $6,093.00 claim which Movant holds in this case. Therefore, Movant's claim is fully secured.

---

4. And, that is why, as a general rule, people are able to buy used vehicles cheaper from other individuals through the local newspaper than by going to a dealer. This is not tough stuff.

5. It is equally clear that this same result would occur by application of the foreclosure standard

used by the Fifth Circuit in its *Rash* decision because if this Movant foreclosed, he'd resell at retail. Apparently, the more things change in the law of valuation of claims in bankruptcy, the more they stay the same.