### In re Charles LYLES and Joan Lyles, Debtors.

### Bankruptcy No. 98–12880.

United States Bankruptcy Court, W.D. Tennessee, Eastern Division.

Nov. 9, 1998.

John Van den Bosch, Jackson, TN, for Debtors.

Brad Sigler, Jackson, TN, for First National Bank.

William L. Guy, Chapter 13 Trustee, Jackson, TN.

## MEMORANDUM OPINION AND ORDER RE FIRST NATIONAL BANK'S OBJECTION TO CONFIRMATION

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on First National Bank's Objection to Confirmation on October 15, 1998. FED. R. BANKR. P. 9014. Pursuant to 28 U.S.C. § 157(b)(2), this is a core proceeding. After reviewing the testimony from the hearing and the record as a whole, the Court makes the following findings of facts and conclusions of law. FED. R. BANKR. P. 7052.

### I. FINDINGS OF FACT

On May 8, 1997, the debtors purchased a new 1997 Chevrolet pick-up truck for $22,-045.00, the purchase of which the debtors financed through First National Bank. Approximately sixteen months later, the Lyles' filed a Chapter 13 petition for bankruptcy relief. In the Chapter 13 plan filed along with their petition, the Lyles' valued the 1997 Chevy pick-up at $12,375.00. First National Bank objected to confirmation of the plan based on this valuation.

As of the date of the hearing on the Bank's objection, the payoff on the truck is $18,-578.31.00. The debtors are currently paying $308 .00 per week in plan payments. The proposed duration of the plan is sixty months.

### II. CONCLUSIONS OF LAW

In *Associates Commercial Corporation v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the United States Supreme Court held that when a debtor invokes the "cram down" provision of 11 U.S.C. § 1325(a)(5) and elects to retain and use collateral over a creditor's objection, the proper method of determining the value of such collateral is the so-called "replacement-value" standard. *Id.,* 117 S.Ct. at 1882. This standard requires a bankruptcy court to assess, on a case-by-case basis, the value of collateral "in light of the purpose of the valuation and of the proposed disposition or use of such property." *Id.* at 1884 (citing 11 U.S.C. § 506(a)). The Supreme Court further mandated that "the value of property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like asset for the same 'proposed . . . use'." *Id.* at 1886. In a famous footnote to the *Rash* case, the Supreme Court declined to define "replacement value" and instead stated that "whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the value of the property." *Id.* at 1886 (n. 6).

In the case at bar, the creditor urges the court to adopt the retail value of the collateral as the "replacement" value, while the debtor encourages the court to use the wholesale value. Like many of the recent cases this Court has had to decide, no legal argument was made as to the propriety of either value,

nor was any evidence introduced at the hearing regarding value. The only figures the parties submitted to this Court to aid in its decision were photocopied pages of the N.A.D.A. Official Used Car Guide attached to their respective Submissions of Facts.

As a result of this lack of support, the Court had to sift through the numerous cases interpreting the *Rash* decision to determine how to define *Rash's* replacement value. In so doing, the Court discovered the very recent Southern District of Ohio case of *In re Glueck*, 223 B.R. 514 (Bkrtcy.S.D.Ohio 1998). After reading the case and analyzing its underlying reasoning, this Court concludes that the *Glueck* case presents the proper method of valuing collateral under *Rash's* "replacement value" holding. This Court hereby adopts the *Glueck* reasoning as set forth below as its own.

After reviewing the cases that have attempted to interpret and apply *Rash*, it is clear that the bankruptcy bar needs, at a minimum, a "starting point" for determining valuation of automobiles for cram down under § 1325(a)(5)(B). The *Rash* decision did not provide a definitive starting point. Instead, the Supreme Court determined it best to leave "to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented." The Supreme Court hinted at the proper way to determine this starting point by adopting the Ninth Circuit's definition of fair market value ("the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition"), and equating that definition with "replacement value". It would have been a simple matter for the Supreme Court to rule that "retail value" was the appropriate means for valuation of an automobile for cram down. However, in the already infamous footnote number 6 of the *Rash* opinion, the Supreme Court chose not to make that ruling. In fact, the [Ninth Circuit] found that "replacement value" was not synonymous with "fair market value" inasmuch as the collateral "is not being replaced." The Supreme Court adopted the [Ninth Circuit] "fair market value" definition, noting that the [Ninth Circuit] apparently viewed it to be incompatible with "replacement value" as defined by other courts.

In the experience of this Court, debtors in Chapter 13 proceedings, when faced with the need to purchase an automobile, do not routinely make that purchase from an automobile dealership. There are numerous other sources for debtors to obtain automobiles at lower costs, avoiding the overhead costs inherent in purchases from automobile dealerships. Debtors are able to purchase automobiles at auctions, from private individuals, from used car lots, from family members, or from rental car companies, just to name a few options. That market is clearly broader than a purely retail market. The Court believes that a willing "nondealership" seller would accept, in many cases, a lower price for a comparable vehicle than would an automobile dealership. While it would be easier for this Court to accept the analyses of the courts that equate "retail value" with "replacement value", the Court does not believe this to be mandated by *Rash*. The Court finds that "retail value" and "replacement value" are not synonymous.

The Court finds that it would be prohibitively costly to require expert testimony for determination of value of every automobile in Chapter 13 proceedings. This Court agrees with the courts ...that have adopted, as a starting point, the average of retail and wholesale values for cram down under § 1325(a)(5)(B). *Rash* defines "replacement value" as exclusive of warranties, storage, and other items, thereby requiring a discount from retail value. A debtor's inability to regularly access the wholesale market requires an upward adjustment from wholesale value. Used vehicle guide books provide objective and authoritative evidence of retail and wholesale values. Many such guide books exist, and the Court does not believe it appropriate to rule that a specific used vehicle guide should be deemed authoritative. The Court will consider any such guide books presented by the parties as evidence of relevant values. This Court is not setting the average of retail and wholesale as

the per se value for purposes of cram down under § 1325(a)(5)(B), but is merely establishing that as a starting point for the analysis. The Court will consider any additional evidence presented by the parties probative of the value of the relevant automobile.

*Glueck,* 223 at 519–520 (citations omitted).

 Following the *Glueck* method of valuing collateral maintained by debtors under the cram down option of § 1325, the Court now must average the wholesale and retail values of the debtors' truck to arrive at the correct "replacement value" figure. The Bank has asserted that the truck's base retail price is $14,625.00. In addition to this figure, the Bank maintains that a total of $1025.00 should be added to the base retail value to reflect the power windows, power door locks, cruise control, tilt steering, aluminum/alloy wheels and third door that the debtors' truck includes. This brings the Bank's proposed retail value of the car to $15,650.00.

In their Submission of Facts, the debtors proposed the trade-in value of $12,225.00 as the correct value of the truck. The debtors did not propose adding any additional value to the trade-in figure for the various accessories, with the exception of the $250.00 for the third door. No evidence was presented nor were any assertions made at the hearing that the Lyles' truck did not include the power windows, power locks, cruise control, tilt steering, and aluminum/alloy wheels. As a result, the Court concludes that the Lyles' truck does indeed include all of these accessories and adds their respective values, as found in the NADA guidebook, to the debtors' proposed value to arrive at a wholesale value of $13,250.00.

No evidence was presented by the parties at the hearing on the Bank's Objection to Confirmation that the value of the Lyles' truck should be reduced for any reason—such as excessive mileage or poor physical condition of the truck. Consequently, neither of the two values will be adjusted by the Court.

Taking the Bank's retail value of $15,650.00 and the debtors' trade-in or wholesale value of $13,250.00 and averaging them, the Court arrives at a value of $14,450.00 for the 1997 Chevrolet Pick-up. Based on this conclusion, the Bank's Objection to Confirmation will be Sustained and the debtor will have fifteen days to submit an amended plan which reflects this value. An order will be entered in accordance herewith.

### III.  ORDER

It is therefore **ORDERED** that First National Bank's Objection to Confirmation is **SUSTAINED**.

It is **FURTHER ORDERED** that the value of the debtors' 1997 Chevrolet Pick–Up Truck is $14,450.00.

It is **FURTHER ORDERED** that the Debtor shall have fifteen days to submit an amended chapter 13 Plan which sets forth this value. At that time, First National Bank may object to the amended repayment terms.

**It is so ordered.**