**In re Major Alexander COLES, Jr., Ayrin Lynette Coles.**

**Bankruptcy No. 99–60018–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 13, 1999.

William C. Parkinson, Jr., Richmond, VA, for Debtors.

Melvin R. Zimm, Glasser and Glasser, P.L.C., Norfolk, VA, for Transouth Financial Corporation.

Robert E. Hyman, Richmond, VA, Chapter 13 Trustee.

### MEMORANDUM OPINION

DOUGLAS O.. TICE, Jr., Chief Judge.

This matter comes before the Court on Transouth Financial Corporation's objection to confirmation of the debtors' Chapter 13 plan. A hearing was held August 10, 1999, after which the Court took the motion under advisement and allowed the parties to file memoranda. For reasons stated in this memorandum opinion the Court sustains Transouth Financial's objection and denies confirmation of the debtors' Chapter 13 plan.

### Facts

On February 9, 1999, Major Alexander Coles, Jr., and Ayrin Lynette Coles signed a Retail Installment Contract and Security Agreement to purchase a used 1997 Ford Escort wagon from Richmond Motor Company for a total of $11,447.89. The contract provided for a $1,400.00 cash down payment and financed the balance over 54 months at 24% interest. On May 19, 1999, the debtors filed a Chapter 13 bankruptcy case without having made any payments on the financed portion of the purchase price. The debtors' Chapter 13 plan, dated June 1, 1999, proposed to value the vehicle at $9,105.00, representing the average between the June 1, 1999, Kelly Blue Book retail value and trade-in value, and to pay interest on the debt at 9%.

### Transouth's Objection to Confirmation

Transouth Financial objects to confirmation on three grounds: 1) that the debtors plan fails to provide Transouth Financial with the payment on its secured claim at an appropriate rate of interest, thereby failing to provide adequate protection during pendency of the case; 2) that the debtors plan fails to provide Transouth Financial with payment of 100% of the value of the collateral held, thereby failing to provide adequate protection of its security interest; and 3) the debtors' plan has not been filed in good faith with respect to the secured claim of Transouth Financial. With respect to the last item, Transouth Financial alleges the lack of good faith is evidenced by the debtors having incurred the indebtedness within two and one-half months of their bankruptcy filing, the debtors' failure to make any payments on this debt before filing bankruptcy and the debtors' attempt to value the vehicle at $9,105.00 in the proposed plan rather than the sales price of $11,411.39.

### Conclusions of Law

■ The Court cannot confirm the debtors' Chapter 13 plan because the *present value* of property to be distributed under the plan is less than the amount of Transouth Financial's fully secured claim as of the effective date of the plan. Section

1325(a)(5)(B) of the Bankruptcy Code allows a debtor in a Chapter 13 plan to retain and use a secured creditor's collateral, over the creditor's objection, provided that the present value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. *See* 11 U.S.C. § 1325.[1] The valuation under § 1325(a)(5)(B)(ii) is meant to determine whether the property to be distributed under the plan is at least equal in value to the amount of the allowed secured claim. *See* 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][iii] (Lawrence P. King, ed., 15th ed. rev.1999).

 Whether a claim is secured or unsecured is determined under § 506(a) of the Bankruptcy Code. *See* 11 U.S.C. § 506(a).[2] In *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 955, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the Supreme Court held that when a repayment plan proposes continued use of the property over the creditor's objection under § 1325(a)(5)(B), the proper application of § 506(a) utilizes a replacement-value standard. More specifically, when a debtor exercises the cram-down option under § 1325(a)(5)(B), the value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer in the debtor's situation would pay to obtain like property from a willing seller. *See id.* at 960, 117 S.Ct. 1879. Whether replacement value is the equivalent of re-

tail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property. *See id.* at 965 n. 6, 117 S.Ct. 1879.

 In this case, the Court finds it significant that no payments were made between the debtors' purchase of the vehicle and filing bankruptcy. The Court considers the $11,447.89 value established for the used vehicle in the Retail Installment Contract and Security Agreement signed by the parties within two and one-half months of the debtors' filing bankruptcy to represent the price willing buyers in the debtors' situation would pay to obtain like property from a willing seller. Because the Court presumes that Transouth Financial's allowed claim, which consists of the outstanding principal of $10,047.89 plus prepetition interest and costs allowed under the contract (if any), is less than the value of the estate's interest in the collateral of $11,447.89, Transouth Financial's claim is fully secured.

 Transouth Financial also objects to the plan provision to allow interest on its claim at 9% rather than the 24% provided for in the contract. The rate of interest proposed in the plan obviously affects the property to be distributed under the plan. Section 1325(a)(5)(B)(ii) requires the court to determine the value of the property to be distributed under the plan as of the effective date of the plan. To convert the future payment stream to be received un-

---

1. Section 1325, in the relevant parts, states:

 (a) Except as provided in subsection (b), the court shall confirm a plan if—
 . . .
 (5) with respect to each allowed secured claim provided for by the plan—
 (A) the holder of such claim has accepted the plan;
 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

 (C) the debtor surrenders the property securing such claim to such holder; . . . .

2. Section 506(a) states:

 An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . is less that them amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . .

der the plan into an equivalent financial amount as of the effective date of the plan (i.e. the *present value*), the court must consider the time value of money. In other words, the court must determine an appropriate discount factor for the future payment stream to ensure that the *present value* of that payment stream as of the effective date of the plan is not less than the amount of the secured claim.

The simplest method of equating the *present value* of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the court. *See* 8 Collier at ¶ 1325.06[3][b][iii][B]. In selecting the discount rate, the court must be mindful that the purpose of the *present value* requirement is to place the holder of an allowed secured claim in the same position economically as if the debtor exercised the option of surrendering the collateral. *See id.* To the extent that the creditor is deprived of the use of funds that are deferred through the proposed plan, the creditor must obtain them elsewhere for whatever purposes they were to be used. *See id.* If the holder of an allowed secured claim receives interest that compensates it in full for any additional interest costs incurred due to the deferral of the payment, it is not harmed by that deferral. *See id.* Thus, the appropriate present value discount rate is one that approximates the creditor's cost of funds in its business borrowings rather than the rate charged to the debtor in the original transaction. *See id.* In this case, Transouth Financial has not established its incremental borrowing rate and the court considers the 24% interest charged the debtors in the contract to be an inappropriate discount rate. Under the circumstances, the Court finds the 9% rate proposed in the debtors' plan to be a fair rate of interest.

In summation, the Court concludes that the debtors' Chapter 13 plan cannot be confirmed because the plan understates the value of the collateral. The Court finds that the 9% interest rate shown in the debtors' plan is fair and overrules the objection that the debtors' plan was not filed in good faith. A separate order will be entered denying confirmation of the present plan.