ELECTRONIC CITATION:  2000 FED App. 0003P (6th Cir.)
File Name:  00b0003p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  MICHAEL C. & TERESA A. GETZ,          )
                                                                            )
                                Debtors.                     )
_____ )
                                                                            )
FIRST MERIT N.A./                                            )
CITIZENS NATIONAL BANK,                            )
                                                                            )
                                Appellant,                    )
                                                                            )
                v.                                                         )          No. 99-8018
                                                                            )
MICHAEL C. GETZ, et al.,                                 )
                                                                            )
                                Appellees.                   )
                                                                            )
_____ )

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division, at Canton.
No. 98-63608.

Submitted on Briefs:  November 16, 1999

Decided and Filed:  January 18, 2000

Before: BROWN, RHODES, and WALDRON, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Phillip D. Schandel, Canton, Ohio, for Appellant.  Greg Krainess, Canton, Ohio, for Appellees.

_____

**OPINION**

_____

In *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879, 138 L. Ed.2d 148 (1997), the Supreme Court held that in a cram down under §1325(a)(5)(B), the allowed amount of a claim secured by a debtor's automobile under 11 U.S.C. § 506(c) is the replacement value of the automobile. In this case, in determining the replacement value of the Debtors' automobile, the bankruptcy court started with the average of the wholesale and retail values according to the National Automobile Dealers Association guidelines. First Merit's appeal asserts that pursuant to *Rash*, the replacement value of an automobile is the retail value. The Panel holds that the bankruptcy court's use of the average of N.A.D.A. wholesale and retail values as a starting point is consistent with *Rash* and that the value determined by the bankruptcy court is not clearly erroneous. Accordingly, the order of the bankruptcy court is **AFFIRMED.**

## I. ISSUE ON APPEAL

This appeal presents the issues of whether the bankruptcy court correctly applied *Rash* and whether the value ultimately determined by the bankruptcy court was clearly erroneous.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497, 103 L. Ed.2d 879 (1989) (citations omitted).

Conclusions of law are reviewed de novo. *See Nicholson v. Isaacman* (*In re Isaacman*), 26 F.3d 629, 631 (6th Cir. 1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union*

*Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted).

"The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard." *Official Unsecured Creditors Committee of Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.* (*In re Valley-Vulcan Mold Co.*), 237 B.R. 322, 326-27 (B.A.P. 6th Cir. 1999) (citation omitted). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *R.D.F. Devs., Inc. v. Sysco Corp.* (*In re R.D.F. Devs., Inc.*), 239 B.R. 336, 338-39 (B.A.P. 6th Cir. 1999) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948))).

## III. FACTS

On September 23, 1996, the Debtors, Michael C. Getz and Teresa A. Getz, purchased a 1994 Pontiac Grand Am for $16,214.24. The Debtors financed the purchase of the vehicle through First Merit, which has a lien on the vehicle.

On November 4, 1998, the Debtors filed a Chapter 13 bankruptcy. The Debtors' plan lists the vehicle's value as $7,500 and anticipates paying First Merit's secured claim in the amount determined under § 506(c), in connection with § 1325(a)(5)(B) (cram down).

First Merit objected to confirmation of the plan, asserting that the vehicle's fair market value was in excess of $8,825. First Merit asserted that the appropriate basis for determining the vehicle's value in a cram down is limited to the N.A.D.A. retail value.

Neither party submitted any evidence of value other than the information in the N.A.D.A. book. The bankruptcy court held that the average of the N.A.D.A. wholesale and retail values, $7,937.50, is an appropriate starting point for making the evidentiary determination of the allowed amount of First Merit's secured claim under *Rash*. Because neither party introduced any additional evidence of value, the bankruptcy court concluded that the vehicle's replacement value is $7,937.50. First Merit filed a timely notice of appeal.

# IV. DISCUSSION

In *Rash*, the Supreme Court held that § 506(c) requires that creditors must receive the replacement value of secured property in a cram down pursuant to 11 U.S.C. § 1325(a)(5)(B). 117 S. Ct. at 1886. The Supreme Court explained that replacement value means "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition." *Id.* at 1884 n.2. The Supreme Court did not specify a method for determining replacement value, but rather left that to the bankruptcy court as the trier of fact:

> Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property. We note, however, that replacement value, in this context, should not include certain items. For example, where the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may be necessary: A creditor should not receive portions of its retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning. Nor should the creditor gain from modifications to the property—*e.g.*, the addition of accessories to a vehicle—to which a creditor's lien would not extend under state law.

*Rash*, 117 S. Ct. at 1886 n.6 (internal citation omitted).

In the present case, the bankruptcy court determined that the best method for calculating the replacement value of an automobile was to use the average of the N.A.D.A. wholesale and retail values as a starting point, subject to appropriate adjustments according to other evidence of value introduced by the parties. The Panel notes that several bankruptcy courts have used this method of valuation since the *Rash* decision. *See, e.g.*, *In re Lyles*, 226 B.R. 854, 856-57 (Bankr. W.D. Tenn. 1998); *In re Glueck*, 223 B.R. 514, 519 (Bankr. S.D. Ohio 1998); *In re Oglesby*, 221 B.R. 515, 519, 523 (Bankr. D. Colo. 1998); *In re Younger*, 216 B.R. 649, 656-57 (Bankr. W.D. Okla. 1998).

Using the average of the N.A.D.A. wholesale and retail values as a starting point to determine the replacement value of a vehicle for a Chapter 13 cram down is consistent with the dictates of *Rash*, which recognized the discretion of the trial judge to adopt a rule

for replacement valuation "to serve the interests of predictability and uniformity." *Rash,* 117 S. Ct. at 1886. Further, the bankruptcy court's approach of using the average of retail and wholesale values merely as the starting point subject to adjustment by other evidence introduced by the parties is not precluded by *Rash*'s rejection of the Seventh Circuit's approach of mechanically assigning the midpoint between the collateral's foreclosure and replacement values. *Id.* The bankruptcy court's method of valuation did not include value for items not retained by the Debtor and also recognized that a debtor has access to markets other than the retail market. *See In re McElroy*, 210 B.R. 833, 835 (Bankr. D. Or. 1997).[1] The bankruptcy court did not err in its method of valuation.

Further, the only evidence of the value of the Debtors' vehicle in the present case was the N.A.D.A. guidelines. Neither party presented any evidence of value specific to the particular vehicle, nor did either party present any evidence of appropriate adjustments. Therefore, the bankruptcy court's factual finding that the replacement value of the vehicle was the average of the N.A.D.A. wholesale and retail values is not clearly erroneous. *See, e.g., Simon v. Chase Manhattan Bank* (*In re Zaptocky*), 232 B.R. 76, 81 (B.A.P. 6th Cir. 1999) ("'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" (citations omitted)).

### V. CONCLUSION

The bankruptcy court's use of the average of the N.A.D.A. wholesale and retail values as a starting point for determining a secured claim under 11 U.S.C. § 506(c) in a Chapter 13 cram down is consistent with *Rash*. The bankruptcy court's factual finding that the replacement value of the vehicle is $7,937.50 is not clearly erroneous. Accordingly, the order of the bankruptcy court is **AFFIRMED**.

---

[1] The pervasiveness of alternative and secondary markets for automobiles, particularly pre-owned automobiles, enables debtors to select from a wide range of options other than paying full retail price, including several options available on the world wide web.