**In re Kenneth D. KNOWLES, Melissa Ann Knowles, Debtors.**

**No. 00–50795.**

United States Bankruptcy Court, E.D. Kentucky, Lexington Division.

Oct. 11, 2000.

---

Kenneth Smee, Lexington, KY, for debtors.

Dean A. Langdon, Lexington, KY, for Toyota Motor Credit Corporation.

John T. Hamilton, Lexington, KY, for RentWay, Inc.

### *MEMORANDUM OPINION*

WILLIAM S. HOWARD, Chief Judge.

This matter has come before the Court on objections to the confirmation of the debtors' Chapter 13 Plan (Doc. # 5). Creditor Toyota Motor Credit Corporation ("TMCC") filed its Objection to Debtors Plan (Doc. # 10) on July 14, 2000. Creditor RentWay, Inc. ("RentWay"), filed its Objection to Confirmation of Proposed Chapter 13 Plan (Doc. # 9) on the same date. TMCC's objection is based on its contention that its collateral, a 1999 Toyota Tacoma truck ("the truck"), is undervalued in the Plan. RentWay objects to the treatment of its rental-purchase agreements as security interests.

The record in this case shows that the debtors filed their Chapter 13 petition and Plan simultaneously on April 10, 2000. Their Schedule D—Creditors Holding Secured Claims listed both of the objecting creditors. The value of the truck is listed there as $13,792.50. The amount of TMCC's claim is listed as $22,153.88. The value of RentWay's collateral (furniture, a television, and jewelry) is listed as $1,190.00, while the amount of its claim is listed as $9,578.65. The debtors filed their First Amended Chapter 13 Plan (Doc. # 12) on July 17, 2000. There they set the value of the truck at $17,812.50. The value of RentWay's collateral remained the same. The original Plan and First Amended Plan proposed to pay each creditor to the extent of the value of its collater-

al, the so-called "cram down" allowed by 11 U.S.C. § 1325(a)(5)(B).

■ The Supreme Court in *Associates Commercial Corporation v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), held that under 11 U.S.C. § 506(a), the value of property retained because the debtor exercised Chapter 13's "cram down" option is the cost the debtor would incur to obtain a like asset for the same use, or the "replacement value." TMCC maintains that pursuant to *Rash*, if the "proposed use" of the truck is its use by the debtors, the proper value is the retail value. TMCC sets out that the N.A.D.A. base retail value of the truck is $18,625.00. Options placed on the truck added $1,300.00 for a total of $19,925.00. TMCC argues that its claim should be treated as an allowed secured claim for this amount.

The application of the replacement-value standard is explained in footnote 6 of the *Rash* opinion:

> Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property. We note, however, that replacement value should not include certain items. For example, where the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may be necessary: A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning.... Nor should the creditor gain from modifications to the property-*e.g.*, the addition of accessories to a vehicle-to which

a creditor's lien would not extend under state law.

The debtors have responded that the Supreme Court gave no direction as to the determination of replacement value, but as footnote 6 clearly shows, they are incorrect in that regard. Further, the Supreme Court specifically enjoined the use of any mechanical mid-point formula, stating: "Whatever the attractiveness of a standard that picks the midpoint between foreclosure and replacement values, there is no warrant for it in the Code." 117 S.Ct. at 1886.

The debtors propose to employ such an average, however, and the value they have assigned to the truck represents that average. The debtors argue that the Sixth Circuit Bankruptcy Appellate Panel in *In re Getz*, 242 B.R. 916 (6th Cir. BAP 2000) held that use of the average of N.A.D.A. wholesale and retail values to obtain replacement value was proper. They misapprehend *Getz*, however, if they believe that it calls for the calculation of the replacement value of a vehicle by averaging its wholesale and retail values. What the *Getz* court did say was that using such an average **as a starting point**, with appropriate adjustments consistent with other evidence as to value introduced by the parties, was not inconsistent with the holding in *Rash*. This Court does not agree that the average of wholesale and retail values is an appropriate starting point, however, and since, as the *Getz* court points out, the trial court has "the discretion . . . to adopt a rule for replacement valuation," the Court declines to use the average of wholesale and retail values as a starting point.

This Court therefore concludes that the proper starting point for determining replacement value in the instant matter is the N.A.D.A. retail value, with appropriate adjustments to be made. Both the debtors and TMCC should have the opportunity to present evidence concerning the nature and amount of these adjustments, and it therefore appears that an evidentiary

hearing will be necessary. This Court will therefore defer a ruling on the value of the truck until such evidence has been presented. An order setting an evidentiary hearing will be entered separately.

■ The Court now considers the objection of RentWay to the characterization of its rental-purchase agreements with the debtors as security interests. RentWay maintains that the various rental-purchase agreements are leases and not security interests pursuant to KRS 367.976, and, as such, must be assumed or rejected by the debtors pursuant to 11 U.S.C. § 365. Provision for such assumption or rejection in a Chapter 13 plan is found in 11 U.S.C. § 1322. The definition section of KRS 367.976, the Rental–Purchase Agreements statute, provides in pertinent part as follows:

As used in KRS 367.976 to 367.985, unless the content otherwise requires:

......

(7) "Rental-purchase agreement" means an agreement for the use of personal property by a natural person primarily for personal, family, or household purposes, for an initial period of four (4) months or less, whether or not there is any obligation beyond the initial period, that is automatically renewable with each payment and that permits the consumer to become the owner of the property. The term rental-purchase agreement shall not be construed to be, nor be governed by, any of the following:

......

(f) A security interest as defined in KRS 355.1–201(37);

RentWay contends that the debtors' Plan attempts to convert lease agreements into secured transactions and thereby allow them to retain over $12,000.00 worth of personal property for the payment of $1,190.00.

RentWay has cited a number of cases which generally support its position.

RentWay represents that all of these cases involved state statutes concerning rental-purchase agreements similar or identical to Kentucky's and that all of them ruled that the agreements under consideration were "true leases" and not security instruments. Interestingly, at least two courts found that the agreements were neither, but that they were peculiar creatures of consumer financing "sufficiently executory to fall within § 365." *See In re Stellman,* 237 B.R. 759 (Bkrtcy.D.Idaho 1999), at fn. 15. *See also In re Trusty,* 189 B.R. 977 (Bkrtcy.N.D.Ala.1995). In any event, no court applying a state rental-purchase agreement statute found that such agreements were security instruments.

The debtors have also cited case law which they maintain supports their position. One of these is *In re Puckett,* 60 B.R. 223 (Bkrtcy.M.D.Tenn.1986), which was decided before Tennessee adopted a rental-purchase agreement statute. In addition, the court in *Puckett* described a situation in which the creditor led debtors to believe that they were being offered an alternative method of financing purchases, rather than rental-purchase agreements, after their credit applications were rejected. Finally, in *In re Osborne,* 170 B.R. 367 (Bkrtcy.M.D.Tenn.1994), the court recognized that Tennessee law had changed with the passage of the Rental–Purchase Agreement Act in 1987, and a change made to the definition of a "security interest" in § 1–201(37) of Tennessee's version of the Uniform Commercial Code in 1992 to specifically exclude rental-purchase agreements. Since the bankruptcy court was bound to apply state law, the reasoning and the result in *Puckett* no longer applied.

The debtors also refer to an unreported decision by Judge Lee in *In re Crawford,* Case No. 90–50066 (E.D.Ky., September 23, 1992) which held rental-purchase agreements to be security instruments, the language of KRS 367.976 notwithstanding. There, after discussing changes in federal Truth–in–Lending and consumer leasing

law and regulations that excluded rental-purchase agreements from their protections, Judge Lee went on to conclude that the leases in question were not terminable without penalty "at any time" by the consumer and thus were "credit sales" and not leases pursuant to the definition in Regulation Z. The rent was payable in advance, and the leases provided that lessees were not entitled to cash refunds. If the lessee chose to terminate soon after paying in advance, no refund would be forthcoming and the lessee would forfeit the rental payment for that period, thus being assessed a "penalty." This Court, however, tends to agree with the courts in *Stellman* and *Trusty* that these rental-purchase agreements are neither true leases nor security instruments, but that they are "sufficiently executory to fall within § 365." The debtors must therefore either assume or reject the leases in question.

An order in conformity with this opinion will be entered separately and the debtors will be given additional time to modify their plan in light of this opinion.