ELECTRONIC CITATION:  2000 FED App. 0012P (6th Cir.)
File Name:  00b0012p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:  ORLANDO WEATHINGTON, ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| TRIAD FINANCIAL CORP., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | No. 00-8008 |
| ) | |
| ORLANDO WEATHINGTON, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division, at Cincinnati.
No. 99-13518.

Argued: October 4, 2000

Decided and Filed:  November 20, 2000

Before: BROWN, MORGENSTERN-CLARREN, and RHODES,
Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Dean R. Prober, POLK, SCHEER & PROBER, Woodland Hills, California, for Appellant.  Thomas F. Ziegler, Cincinnati, Ohio, for Appellee. **ON BRIEF:**  Dean R. Prober, Michael S. Polk, Mark T. Domeyer, POLK,  SCHEER  &  PROBER,  Woodland  Hills, California, Michael Moskowitz, LAW OFFICES OF MOSKOWITZ AND MOSKOWITZ, Cincinnati, Ohio, for Appellant.  Thomas F. Ziegler, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

STEVEN W. RHODES, Chief Bankruptcy Appellate Panel Judge. In this case, a secured creditor appeals the bankruptcy court's determination that the appropriate value of a vehicle for purposes of redemption pursuant to 11 U.S.C. § 722 is the liquidation value. The Creditor argues that the appropriate value should be the replacement value, as defined by the Supreme Court in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879 (1997). The Panel concludes that *Rash* is distinguishable because that case involved the proper valuation in the context of a Chapter 13 plan confirmation. The use of the liquidation value in the redemption context is fully consistent with the Supreme Court's analysis in *Rash* as well as the legislative history of § 722. Further, the bankruptcy court properly determined the liquidation value of the Debtor's vehicle based on the parties' stipulation. Accordingly, the bankruptcy court's Order Granting Debtor's Motion For Redemption is **AFFIRMED**.

## I. ISSUE ON APPEAL

The sole issue on appeal is whether a debtor in a Chapter 7 case may redeem a vehicle pursuant to 11 U.S.C. § 722 by paying the secured creditor the liquidation value of the vehicle.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

Conclusions of law are reviewed de novo. *See Nicholson v. Isaacman* (*In re Isaacman*), 26 F.3d 629, 631 (6th Cir. 1994). "De novo review requires the Panel to review

questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted). The determination regarding the method for calculating the value of a vehicle is a conclusion of law reviewed de novo. *See First Merit N.A./Citizens Nat'l Bank v. Getz* (*In re Getz*), 242 B.R. 916 (B.A.P. 6th Cir. 2000).

The determination of a vehicle's value is a factual finding. *See Getz*, 242 B.R. at 920. "The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard. A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. at 918 (citations omitted).

## III. FACTS

This appeal arises from an order granting the Debtor's motion for redemption of a 1994 Chrysler Concorde pursuant to § 722. The parties stipulated to the facts as follows:

> 1. The particular characteristics of the motor vehicle which is the subject of the motion for redemption by the Debtor(s) are such that the various book values of the motor vehicle of the applicable regional edition of the N.A.D.A. guide fairly represents [sic] the value of subject motor vehicle as valued from such perspectives so listed.
>
> 2. The applicable regional edition of the N.A.D.A. for the month of August, 1999, such month being agreed by the parties as the appropriate month of such valuation, reflects that the motor vehicle has a "Trade-In" (wholesale) value of $6,700.00 and has a "Retail" (replacement) value of $8,700.00 as reflected by the copy of the page of such publication attached hereto.
>
> 3. The parties disagree there [sic] as to the appropriate valuation standard for determination of the allowed secured claim under 11 U.S.C. [§] 506 for purposes of a redemption under 11 U.S.C. [§] 722, but all other issues concerning the right of the debtor to redemption of the subject motor vehicle are not in controversy.
>
> 4. In the event the Court determines the appropriate standard for valuation of the subject motor vehicle in this contested

matter is a "Replacement Value" standard, such amount should be equal to the retail book value specified above.

5. In the event the Court determines the appropriate standard for valuation of the subject motor vehicle in this contested matter is a "Liquidation Value" or "Wholesale Value" standard, such amount would be equal to the wholesale book value specified above.

(Appellant's Appendix, Ex. 2.)

The parties presented no evidence to the bankruptcy court regarding the particular characteristics or condition of the vehicle at issue, or regarding the price that the Debtor would be required to pay to obtain a replacement vehicle or the amount that Triad Financial could obtain in a commercially reasonable sale.

The bankruptcy court adopted the reasoning of *In re Donley*, 217 B.R. 1004 (Bankr. S.D. Ohio 1998), which held that in the redemption context, the liquidation value is the appropriate value. The court then applied the stipulated facts to conclude that the redemption amount in this case was $6,700.

## IV. DISCUSSION

Section 722 of the Bankruptcy Code provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722.

The phrase "allowed secured claim" is defined in § 506(a) as follows:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be

> determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

Triad Financial asserts that the valuation standard for redemption in Chapter 7 is controlled by the recent Supreme Court decision in *Rash*. The issue in the *Rash* case was the appropriate valuation of a secured creditor's claim under § 506(a) when a Chapter 13 debtor utilizes the "cramdown" provision of § 1325(a)(5)(B) in order to retain a vehicle. The secured creditor in *Rash* argued that the appropriate valuation was the replacement value, the price that the debtor would have to pay to purchase a similar vehicle. The debtor, however, asserted that the proper valuation was the net amount that would be realized upon repossession and sale of the collateral.

Analyzing the elements of § 506(a), the Supreme Court stated, "The first sentence [of § 506(a)] . . . tells us that a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral." *Rash*, 489 U.S. at 961. This sentence, however, "is not enlightening on how to value collateral." *Id.* The Supreme Court went on to note that the second sentence of § 506(a), regarding the "'proposed disposition or use' of the collateral is of paramount importance to the valuation question." *Id.* at 962 (citing 11 U.S.C. § 506(a)).

The Supreme Court concluded that pursuant to § 506(a), the value of property retained when the debtor utilizes the cramdown provision of § 1325(a)(5)(B) is "the cost that the debtor would incur to obtain a like asset for the same 'proposed . . . use.'" *Id.* at 965 (quoting 11 U.S.C. § 506(a)). In reaching its decision the Supreme Court reasoned as follows:

> Tying valuation to the actual "disposition or use" of the property points away from a foreclosure-value standard when a Chapter 13 debtor, invoking cram down power, retains and uses the property. . . . If a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may again default and the property may deteriorate from extended use. Adjustments in the interest rate and secured creditor demands for more "adequate protection" . . . do not fully offset these

> risks. . . . Of prime significance, the replacement-value standard accurately gauges the debtor's "use" of the property.

*Id.* at 962-963 (citations omitted).

The *Rash* analysis of valuation is useful in the present case. However, because the decision in *Rash* only dealt with the issue of valuation in a Chapter 13 cramdown, it is not binding in this Chapter 7 case. After *Rash*, the bankruptcy court decisions addressing the valuation of collateral in the context of a Chapter 7 redemption have recognized that the use and disposition of collateral in the Chapter 7 redemption context is quite different from the Chapter 13 cramdown context. These decisions have thus determined that the replacement value is not an appropriate valuation standard. Rather, these cases conclude that the creditor's allowed secured claim in these circumstances should be determined by the liquidation value, the amount that the creditor would receive if the creditor repossessed and sold the collateral in the manner most beneficial to the creditor.[1] *See In re Henderson,* 235 B.R. 425 (Bankr. C.D. Ill. 1999); *In re Dunbar*, 234 B.R. 895 (Bankr. E.D. Tenn. 1999); *In re Williams*, 224 B.R. 873 (Bankr. S.D. Ohio 1998); and *In re Donley*, 217 B.R. 1004. Indeed, Triad Financial has cited no cases decided after *Rash* in support of its position and the Panel has not been able to locate any.

The *Donley* decision, on which the bankruptcy court relied in this case, set forth two primary reasons for its conclusion that the liquidation value was the appropriate value in the redemption context. First, the court relied on the legislative history of § 722:

> According to the House report, redemption . . . "amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract." H. REP. No. 95-595, at 127 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5913. These comments strongly suggest that Congress, in enacting § 722 as part of the Bankruptcy Reform Act of 1978, intended to place the creditor

---

1. We use the terms "liquidation" and "wholesale" valuation interchangeably, as did the parties in this case. We recognize that some courts have made a distinction in the terms. *See, e.g., In re Dunbar,* 234 B.R. 895, 896-97 (Bankr. E.D. Tenn. 1999). For our purposes, both terms refer to the secured creditor's expected recovery upon repossession and sale by auction or other wholesale means.

> in the same position it would have been in had the property not been redeemed and the creditor had repossessed and caused a sale of such property. *See* Carlson, "Redemption and Reinstatement in Chapter 7 Cases," 4 AM. BANKR. INST. L. REV. 289, 306 (Winter 1996).

*In re Donley*, 217 B.R. at 1007.

The *Donley* decision also relied on language in *General Motors Acceptance Corp. v. Bell* (*In re Bell*), 700 F.2d 1053 (6th Cir. 1983). In a footnote, the court in *Bell* recognized that in the context of redemption under § 722, "the most likely use in most cases is sale for benefit of the creditor . . . ." *Id*. at 1055, n.3. Accordingly, the court noted that the value to be paid upon redemption would generally approximate the then "market value of the property," referring to the wholesale market in which the creditor would most likely dispose of the property. *Id*. *Donley* then reasoned that "*Rash* need not change this understanding," explaining:

> As the Supreme Court noted [in *Rash*], retention and use of collateral by the debtor in a chapter 13 cramdown exposes the secured creditor to a double risk of future default by the debtor and the deterioration of the property from extended use. . . . In contrast, redemption involves neither of these risks. Therefore, imposition of the replacement value standard is probably inappropriate in redemption cases.

*In re Donley*, 217 B.R. at 1007 (citations omitted).

The Panel agrees with the bankruptcy court that the reasoning of *Donley* is persuasive. A determination of value is made on the basis of the proposed use and disposition of the collateral, as *Rash* holds. Appreciating the economic realities, *Donley* recognized that the disposition is different when a debtor redeems property in Chapter 7 by paying off the creditor, as opposed to the disposition in Chapter 13 in which a debtor continues making payments to the creditor over time and the creditor incurs the dual risks of both loss of payment and loss of value as the collateral deteriorates over time. In contrast to the Chapter 13 cramdown scenario described in *Rash*, there is no distinction in the economic consequences to the creditor between surrender and redemption in Chapter 7.

Moreover, because the statutory provisions establishing the right to redeem collateral by paying the creditor's secured claim pursuant to §§ 722 and 506(a) do not clearly and explicitly set forth the proper valuation method, it is fully appropriate to rely on the legislative history of § 722. That legislative history clearly demonstrates the Congressional intent that in the redemption context, a creditor should be paid the same amount that it would have been paid if the property were repossessed and sold.

> Another problem in connection with security interests in consumer goods is solved by the provision in the bill of a power of redemption in the debtor. In consumer cases, very often a secured creditor with a security interest in all of the debtor's property, including household and personal goods, uses the threat of foreclosure to obtain a reaffirmation of a debt. Otherwise, the secured creditor is able to deprive a debtor of even the most insignificant household effects, including furniture, cooking utensils, and clothing, even though the items have little if any realizable market value. However, the goods do have a high replacement cost, and thus the creditor is able to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess.
>  Under the bill, the debtor may redeem from a secured creditor property that would be exempt in the absence of the security interest, or property that the trustee abandons, if the debtor pays the secured creditor the allowed amount of the creditor's secured claim. <u>This right amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs</u>, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract.

H.R. REP NO. 95-595, at 122 (1977) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5963.

The liquidation value best reflects Congressional intent because the commercial reality is that creditors that repossess vehicles most often sell them wholesale at auctions. Indeed, because the process of repossessing and selling a vehicle involves some additional cost to the creditor, it is likely that when a debtor pays the creditor the liquidation value of a vehicle to redeem it, the creditor may actually receive more money than if it had repossessed the vehicle. In any event, as between the liquidation value and the replacement value, the liquidation value better approximates the creditor's recovery upon

executing its contract rights than the replacement value, and that is the Congressional intent as reflected in the legislative history.

After adopting the reasoning of *Donley* and determining that the debtor could redeem the vehicle by paying the liquidation value, the bankruptcy court then applied the parties' stipulated wholesale value of $6,700. In light of the stipulation, the bankruptcy court's factual finding regarding the liquidation value of the vehicle is not clearly erroneous.

## V. CONCLUSION

The Panel holds that the liquidation value is the appropriate value for determining the amount that a Chapter 7 debtor must pay to redeem collateral pursuant to § 722. Based on the parties' stipulation, the appropriate liquidation value of the Debtor's vehicle is $6,700. Accordingly, the decision of the bankruptcy court is **AFFIRMED**.