**In re Franz Gerald WEBER, formerly doing business as Weber's Welding, and Lori Jean Weber, Debtors.**

**Franz Gerald Weber, and Lori Jean Weber, Appellants,**

v.

**Wells Fargo Auto Finance, Inc., Appellee.**

BAP No. WY–05–014.
Bankruptcy No. 04–21808.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Nov. 2, 2005.

George L. Arnold of George L. Arnold, P.C., Evanston, Wyoming, for Appellants.

John C. Patton and Wendy Curtis Palen of Patton & Davison, Cheyenne, Wyoming (on the brief), for Appellee.

Before NUGENT, THURMAN, and ROMERO [1], Bankruptcy Judges.

## OPINION

ROMERO, Bankruptcy Judge.

This is an appeal filed by the Debtors, Franz Gerald and Lori Jean Weber ("Debtors"), from the Order Granting Motion to Redeem entered by the United States Bankruptcy Court for the District of Wyoming in connection with a 2003 Ford Taurus. The Debtors appeal the findings of fact and conclusions of law as they relate to the value of the vehicle for redemption purposes as determined by the Bankruptcy Court. For the reasons stated below, the Bankruptcy Court's decision is REVERSED.

## I. BACKGROUND

The facts underlying this appeal are not in dispute. The Debtors filed for protec-

---

**1.** Honorable Michael E. Romero, United States Bankruptcy Judge, United States Bank- ruptcy Court for the District of Colorado, sitting by designation.

tion under Chapter 7 of the United States Bankruptcy Code [2] on September 17, 2004. On September 30, 2004, the Debtors filed a Motion for Redemption (the "Motion"), through which they sought to redeem a 2003 Ford Taurus SES (the "Taurus") for the Kelley Blue Book "trade-in" value of $8,285.00.[3] Secured creditor Wells Fargo Auto Finance, Inc. ("Wells Fargo") objected to the Motion, asserting the Debtors' valuation was too low because it did not include the value of the Taurus's optional equipment. Wells Fargo alleged the Taurus had a "trade-in" value of between $10,160.00 and $10,400.00.

At the preliminary hearing on the Motion, the Bankruptcy Court indicated that it believed the Kelley Blue Book "private party" value [4] was more appropriate for application in a redemption situation.[5] As a result, at the final hearing held on February 2, 2005, the issue was not the "trade-in" value as originally framed by the pleadings, but rather, which valuation standard was to be used, the "trade-in" value or the "private party" value.[6] At the final hearing, the Court made the following observation:

> Well, the statements of the parties and the review of the file shows that reasonable and proper redemption value of this vehicle to be in the amount of $10,940 to be paid, this being the private party sale value as listed in the Kelley Blue Book. The Court sees no reason to differentiate between market value of a vehicle set for purposes of Chapter 13 plan [as discussed in *Rash*] and ... market value of the same vehicle set for redemption purposes in a bankruptcy. To do, so seems to create some type of artificial standard. It depends on who purchases the vehicle, who sells it and who buys it, *et cetera, et cetera;* therefore, I'm going to set the value at $10,940.[7]

This oral ruling was memorialized in an "Order Granting Motion to Redeem," drafted by Wells Fargo's counsel and signed by the Bankruptcy Court on February 17, 2005 (the "Redemption Order"). The Redemption Order states in relevant part:

> The Court ... finds that the valuation, for purposes of redemption under 11 U.S.C. § 722, is the same standard as plan valuations under Chapter 13s. The Court finds that the Kelley Blue Book Private Party valuation provided by the Creditor is the more appropriate standard of valuation as opposed to the trade-in valuation argued by the Debtors.
>
> **IT IS, THEREFORE, ORDERED** that the Debtors' Motion to Redeem is granted at a value for the 2003 Ford Taurus

---

2. 11 U.S.C. § 101, *et seq.*

3. The Kelley Blue Book defines "trade-in" value as what a consumer can expect to receive from a dealer for a trade-in vehicle assuming an accurate appraisal of condition. *Appellants' Appendix*, at 23.

4. The Kelley Blue Book defines "private party" value as what a buyer can expect to pay when buying a used car from a private party. It assumes the Taurus is sold "as is" and carries no warranty (other than the continuing factory warranty). *Appellants' Appendix*, at 26.

5. Transcript of Recorded Hearing Proceedings, November 10, 2004, *Appellants' Appendix*, at 33.

6. As a result of this change of focus on valuation, the parties stipulated that the "trade-in" and "private party" values for the Taurus were $8,215.00 and $10,940.00, respectively. Transcript of Recorded Hearing Proceedings, February 2, 2005, *Appellants' Appendix*, at 42–43.

7. Transcript of Recorded Hearing Proceedings, February 2, 2005, *Appellants' Appendix*, at 47–48.

... of $10,940. To redeem the property, the Debtors must pay the Creditor such sum within 30 days of the date of entry of this Order. Upon redemption, the Creditor shall provide a lien release to the Debtors and, if in possession of the title, shall provide that to the Debtors as well. In the event no redemption is made within such time period, this Order shall constitute an order for relief allowing the Creditor relief from the stay to take possession and sell the vehicle.[8]

This appeal followed.

## II. APPELLATE JURISDICTION AND STANDARD OF REVIEW

With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from final judgments, orders, and decrees of bankruptcy courts within the Circuit.[9] Here, none of the parties opted to have this appeal heard by the District Court for the District of Wyoming and are deemed to have consented to this Court's jurisdiction.[10] The Bankruptcy Court's order is a final order, and the appeal was timely filed. Accordingly, this Court has jurisdiction over this appeal.

■ The Bankruptcy Court's conclusions of law are reviewed *de novo*.[11] Whether the Bankruptcy Court properly applied 11 U.S.C. §§ 506 and 722 [12] to the facts of this case is an issue of law, and subject to *de novo* review.[13]

**8.** Order Granting Motion to Redeem, *Appellants' Appendix*, at 16.

**9.** 28 U.S.C. § 158(a), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002(a).

**10.** 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001–1(d).

**11.** *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *In re Lampe*, 331 F.3d 750, 753 (10th Cir.2003).

## III. ISSUE

The issue before the Court is whether the Bankruptcy Court employed the appropriate valuation standard in granting the Motion.

## IV. DISCUSSION

### A. Is the Appeal Moot?

■ Initially, the Court must address whether this appeal is moot. The Bankruptcy Court ordered the Debtors to redeem the Taurus within 30 days of the date of entry of its order. If they did not redeem during that period, the Redemption Order granted Wells Fargo relief from the automatic stay to take possession of and sell the Taurus. It does not appear that the Debtors obtained a stay pending appeal, and the thirty-day period has expired. However, during argument before this Court, Appellants' counsel represented the Debtors were still in possession of the Taurus and were prepared to tender the redemption amount of $8,215.00 if successful on the appeal. As a result, this appeal is not moot.

### B. Foreclosure Value, Not Replacement Value, Applies Under §§ 506(a) and 722.

■ It is undisputed that § 722 applies in this case.[14] Under this provision, a

**12.** Unless otherwise specified, all future statutory references in the text are to Title 11 of the United States Code.

**13.** *See O'Gilvie v. United States*, 66 F.3d 1550, 1555 (10th Cir.1995), *aff'd*, 519 U.S. 79, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996).

**14.** Section 722 provides:
An individual debtor may ... redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer

debtor is allowed to "strip off" a portion of a claim against exempt or abandoned property, paying the lender only the portion of its claim secured by the value of the collateral.[15] Wells Fargo argues that the United States Supreme Court's decision in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), controls and mandates the application of a "replacement value" in any and all redemption situations.[16] This Court disagrees.[17]

In *Rash*, the Supreme Court held that "replacement value," that is, the cost that a debtor would incur to obtain a like asset for the same proposed use, applies to value personal property under § 506(a) when a Chapter 13 debtor seeks confirmation of a plan under the cram-down provision of § 1325(a)(5)(B).[18] Nowhere in that decision does the Supreme Court hold that *all* valuations under § 506 must be based on a replacement value standard.

In *Rash*, the Supreme Court initially observes the first sentence of § 506(a) sets no valuation standard. While that language instructs a court as to what it must evaluate, "it is not enlightening on how to value collateral."[19] The Supreme Court then continues: "The second sentence of § 506(a) does speak to the *how* question.

'Such value,' that sentence provides, 'shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property.'"[20] Of "paramount importance to the valuation question" is the proposed "disposition or use" of the subject collateral.[21]

The Supreme Court then analyzed the standard for valuation in the context of a Chapter 13 debtor's exercise of the cram-down provision with respect to treatment of a secured claim. In a cram-down scenario, the debtor may keep the collateral over the creditor's objection so long as the creditor is provided with the equivalent of the present value of the collateral over the life of the plan.[22] As a result, the creditor is exposed to "double risks" in that the debtor keeps the collateral under a court-imposed "crammed down" financing arrangement and, in the event of a subsequent debtor default, the "property may deteriorate from extended use."[23] Use of the replacement standard in those instances is mandated by § 506 because it values "'the creditor's interest in the collateral in light of the proposed [repayment plan] reality: no foreclosure sale and economic benefit for the debtor derived from the collateral equal to ... its [replacement]

---

debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

15. *See Dewsnup v. Timm*, 502 U.S. 410, 414, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (lien stripping not allowed in Chapter 13 under § 506(d), but recognizing ability to do so under § 722).

16. *Appellee's Brief*, at 4–6.

17. The Court recognizes that § 722 has been revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the

"Act"), which imposes a "replacement value" standard in this situation. However, this provision of the Act was not effective until October 17, 2005, and thus, is not a part of the Court's analysis herein.

18. *Id.* at 965, 117 S.Ct. 1879.

19. *Id.* at 961, 117 S.Ct. 1879.

20. *Id.*

21. *Id.* at 962, 117 S.Ct. 1879.

22. 11 U.S.C. § 1325(a)(5)(B).

23. *Rash*, 520 U.S. at 962–963, 117 S.Ct. 1879.

value.'"[24] Because the secured creditor is receiving back neither the collateral nor its proceeds, liquidation value is not relevant to the debtor's intended use or disposition in the context of a Chapter 13 cramdown.[25]

A § 722 redemption presents a totally different situation. "The true underpinning of *Rash* is its focus on the 'double risk' of a debtor's retention of property in a Chapter 13 case and payment of the value of the creditor's allowed secured claim over time."[26] In a redemption situation, no such concerns exist.

■ A redemption is the functional equivalent of the surrender of an automobile, followed by a public auction (or foreclosure sale) at which the debtor appears, bids at the auction, and purchases the automobile for its liquidation value as determined by the market place on the date of the sale.[27] The § 722 redemption allows the secured creditor to bypass the foreclo-

sure process and thus save the attendant expenses, such as storage charges or the costs of an auction.[28] Further, and equally significant, under a redemption scenario the creditor is paid for its collateral, and has no further relationship with the debtor which may expose it to further risk. Indeed:

> *Rash*, therefore, mandates that the creditor's interest in the collateral be valued in light of the proposed redemption reality: That is, the functional equivalent of a foreclosure sale will take place, and that is the "proper guide" under a prescription hinged to the property's "disposition or use" for purposes of valuation under section 722 redemption. *Rash*, 520 U.S. at 962–63, 117 S.Ct. 1879.[29]

This interpretation of valuation in a § 722 redemption is consistent with the vast majority of courts that have dealt with this issue.[30]

---

24. *Id.* (citing *In re Winthrop Old Farm Nurseries*, 50 F.3d 72, 75 (1st Cir.1995)).

25. *Id.*

26. *In re Perez*, 318 B.R. 742, 746 (Bankr. M.D.Fla.2005) (quoting *In re Smith*, 313 B.R. 785, 789 (Bankr.N.D.Ind.2004)).

27. *Perez*, 318 B.R. at 746. *See also In re Weathington*, 254 B.R. 895, 900 (6th Cir. BAP 2000) ("In contrast to the Chapter 13 cramdown scenario described in *Rash*, there is no distinction in the economic consequences to the creditor between surrender and redemption in Chapter 7."); *see also In re Tripplett*, 256 B.R. 594, 598 (Bankr.N.D.Ill.2000) ("... the impact of redemption is much closer to surrender than to cramdown, and *Rash* cannot reasonably be read to mandate replacement value in the redemption context.").

28. *Weathington*, 254 B.R. at 900 ("... it is likely that when a debtor pays the creditor the liquidation value of a vehicle to redeem it, the creditor may actually receive more money than if it had repossessed the vehicle.").

29. *Perez*, 318 B.R. at 747.

30. *See, e.g., Weathington*, 254 B.R. at 899 (stating that the creditor cited no cases supporting the application of *Rash* and the Bankruptcy Appellate Panel found none on its own); *Perez*, 318 B.R. at 743 (concluding that "just as *Rash* mandates the use of a replacement value in the context of cram down under Chapter 13 ... *Rash* mandates the use of a wholesale value in the context of redemption under Chapter 7."); *In re Neal*, 314 B.R. 198, 200 (Bankr.N.D.Iowa 2004) (for purposes of a section 722 redemption, adopting liquidation value is synonymous with the concepts of wholesale, foreclosure and trade-in values); *Smith v. Household Automotive Fin. Corp.*, 313 B.R. 267, 269 (N.D.Ill.2004) (stating the *Rash* rationale supported a finding limiting its holding to a Chapter 13 context); *In re Barse*, 309 B.R. 109, 110 (W.D.N.Y. 2004) ("[T]here is a difference with a distinction or maybe a distinction with a difference between what *Rash* was dealing with and what we're dealing with in this § 722 scenario."); *In re Ard*, 280 B.R. 910, 914–915 (Bankr.S.D.Ala.2002) (collecting cases and noting post-*Rash* decisions have rejected

■ Further, when a statute is vague or ambiguous, "other interpretive tools may be used, including an examination of the act's purpose and of its legislative history." [31] A review of legislative history relating to § 722 which was added to the Bankruptcy Code in 1978 (no federal right of redemption existed under the Bankruptcy Act) adds further support to the use of a "trade-in" value herein.[32]

## V. CONCLUSION

Therefore, this Court holds that *Rash* does not mandate application of replacement value in a § 722 redemption scenario. Indeed, to do so would ignore *Rash*'s application of the plain language in § 506(a), which does not advocate blind adherence to replacement value in every case. The Court finds the "private party" valuation used by the Bankruptcy Court in this case was incorrect.[33]

The Order of the Bankruptcy Court is hereby REVERSED, and the Bankruptcy Court is directed to enter judgment allowing redemption in favor of the Debtors and against Wells Fargo in the agreed-upon amount of $8,215.00.

■

*Rash's* approach in Chapter 7 and have used "liquidation," "foreclosure," or "wholesale" values in Chapter 7 redemption).

**31.** *United States v. Pringle*, 350 F.3d 1172, 1180 n. 11 (11th Cir.2003); *In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir.2002).

**32.** The pertinent legislative history states:

Another problem in connection with security interests in consumer goods is solved by the provision in the bill of a power of redemption in the debtor. In consumer cases, very often a secured creditor with a security interest in all of the debtor's property, including household and personal goods, uses the threat of foreclosure to obtain a reaffirmation of a debt. Otherwise, the secured creditor is able to deprive a debtor of even the most insignificant household effects, including furniture, cooking utensils, and clothing, even though the items have little if any realizable market value. However, the goods do have a high replacement cost, and thus the creditor is able to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess.

Under the bill, the debtor may redeem from a secured creditor property that would be exempt in the absence of the security interest, or property that the trustee abandons, if the debtor pays the secured creditor the allowed amount of the creditor's secured claim. *This right amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs,* and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract. H.R.Rep. No. 95–595, at 122 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6088 (footnotes omitted), *quoted in Weathington,* 254 B.R. at 900 (emphasis added in *Weathington*).

**33.** Admittedly, the current NADA descriptions of different values do not correspond to descriptions of values contained in bankruptcy case law. However, the "private party" value, described as "as-is, carrying no warranty, and priced depending on the vehicle's actual condition and local market conditions," corresponds more closely to "replacement value" than to liquidation value. The "trade-in" value agreed upon by the parties reflects a value more in line with the reasoning set forth above.