*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 12b0002n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: STEVEN M. PERALES, | ) | |
| | ) | |
| Debtor. | ) | No. 11-8045 |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Canton.
Bankruptcy Case No. 11-60366.

Decided and Filed: March 12, 2012

Before: EMERSON, McIVOR, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Thomas C. Loepp, MAISTROS & LOEPP, LTD., Stow, Ohio, for Appellant. Douglas L. Thrush, THRUSH & ROHR, LLC, Canton, Ohio, for Appellee.

_____

**OPINION**
_____

GEORGE W. EMERSON, JR., Bankruptcy Appellate Panel Judge. CNAC Motor Car Credit Co. appeals an order of the bankruptcy court granting Steven M. Perales' motion to redeem his 2002 Dodge Neon for a lump sum of $1,400. For the reasons that follow, we affirm the bankruptcy court's order.

# I.   ISSUE ON APPEAL

The issue presented by this appeal is whether the bankruptcy court erred in granting the Debtor's motion to redeem his personal use vehicle for the lump sum of $1,400.

# II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and neither party has timely elected to have this appeal heard by the district court.  28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  An order granting a motion to redeem is a final order.  *Weber v. Wells Fargo Auto Fin., Inc.* (*In re Weber*), 332 B.R. 432 (B.A.P. 10th Cir. 2005).

The court's findings of fact are reviewed under the clearly erroneous standard.  *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007).  "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

The bankruptcy court's legal conclusions are reviewed de novo.  *Solis v. Laurelbrook Sanitarium and School, Inc.*, 642 F.3d 518 (6th Cir. 2011).  "De novo means that the appellate court determines the law independently of the trial court's determination."  *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

# III.   FACTS

On February 11, 2011, Steven M. Perales ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  Listed on Schedule B was a debt owing CNAC Motor Car Credit Co. ("CNAC") in the amount of $10,014.  The debt to CNAC is secured by a 2002 Dodge Neon.

On April 25, 2011, the Debtor filed a motion to redeem the 2002 Dodge Neon for the lump sum of $1,132 pursuant to 11 U.S.C. § 722 and Federal Rule of Bankruptcy Procedure 6008. Attached to the Debtor's motion was a printout from Edmonds.com showing that the trade-in value of the vehicle was $792, the private party sale value was $1,132, and the dealer retail was $1,586.

The Debtor's motion also included a "Notice of Motion to Redeem" which indicated that any party opposing the requested relief must file a written response with the bankruptcy court by May 25, 2011. CNAC received notice of the Debtor's motion.

CNAC filed a Motion in Opposition to the Debtor's Motion to Redeem on April 28, 2011. In its opposition, CNAC asserted that the vehicle was not exempt, was not abandoned, and that the debt thereon was not dischargeable.[1] CNAC further asserted that the Kelley Blue Book value of the vehicle was $3,570, and that, as of the time of the opposition, the outstanding balance of the note was $10,013.54. CNAC did not attach to its opposition a copy of the Kelley Blue Book page or a printout from the Kelley Blue Book website to support their claim that the Kelley Blue Book value was $3,570. Finally, CNAC stated that the Debtor had failed to make periodic payments on the note from January to April 2011.

CNAC filed a notice of the hearing on its opposition to the Debtor's motion to redeem on April 29, 2011.[2] The notice indicated that the bankruptcy court would hold a hearing on CNAC's opposition to the Debtor's redemption motion on June 6, 2011.

At the hearing on June 6, 2011, counsel for the Debtor asserted that the Edmunds.com values listed in the Debtor's motion to redeem were accurate for purposes of redemption. Debtor's counsel also advised the court that she had looked at the results of a local auctioneer, Skipco, on similar cars. Those values, she stated, ranged from $250 to $2,700. Debtor's counsel then requested that the bankruptcy court either rule on the redemption motion or set an evidentiary hearing regarding the value of the vehicle. Counsel for CNAC argued that because there was a retail installment contract which had not been paid in full, the Debtor must either return the vehicle or pay the entire outstanding balance of $10,014 to redeem it. Again, CNAC provided no evidence to the court regarding the value of the vehicle. Although CNAC originally stated in its opposition to the Debtor's motion to redeem that the vehicle was not subject to redemption, it did not make such assertions before the bankruptcy court at the June 6, 2011 hearing. CNAC also failed to make those

---

[1] At both the hearing before the bankruptcy court on the Debtor's motion and on appeal, CNAC argues only that the valuation was improper.

[2] The notice also indicated that the bankruptcy court would conduct a hearing on CNAC's motion for relief from the automatic stay at the same time.

assertions in this appeal. Therefore, the only dispute before the bankruptcy court, and now before the Panel, concerns the amount the Debtor must pay CNAC to redeem the vehicle.

At the conclusion of the hearing, the bankruptcy court ruled from the bench that the Debtor had the right to redeem the Dodge Neon. The court further found that, after looking at several sources on its own, it had arrived at a value of $1,400, which was only slightly more than the Debtor's proposed value of $1,132. On June 13, 2011, the bankruptcy court entered a written order granting the Debtor's motion to redeem which directed the Debtor to pay CNAC a lump sum of $1,400 within 30 days of entry of the order. CNAC's timely notice of appeal followed on June 22, 2011.

## IV. DISCUSSION

Pursuant to 11 U.S.C. § 722, an individual debtor may redeem consumer goods from a lien securing a dischargeable consumer debt, if the property is exempt under 11 U.S.C. § 522 or has been abandoned under § 544, by paying the lienholder in full, at the time of redemption, the amount of the "allowed secured claim" that is secured by the collateral. 11 U.S.C. § 722.

The term "allowed secured claim" is not defined in the Bankruptcy Code. See, 11 U.S.C. § 101. However, 11 U.S.C. § 506 describes how to determine a creditor's secured claim, and, thus, what amount a debtor must pay pursuant to § 722 in order to redeem property:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Section 506(a)(2) further describes in more detail the method of valuing a secured claim if the debtor is an individual in chapter 7 or 13. It states:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs

> of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

Section 506(a)(2) was added to the Bankruptcy Code in 2005 when Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA). Unfortunately, "no consensus has emerged in the case law interpreting § 506(a)(2) as to how replacement value for motor vehicles should be determined." *In re Pearsall*, 441 B.R. 267, 270 (Bankr. N.D. Ohio 2010) (collecting cases detailing vehicle valuation). As the *Pearsall* court explained, "[t]he results reached ultimately seem to depend, not entirely surprisingly, on the overall record a court is presented with in a particular case." *Id*. Courts have employed a variety of vehicle valuation methods under § 506(a)(2) ranging from use of the Kelley Blue Book or N.A.D.A. Guide retail values of a like vehicle to the opinion testimony of a car salesperson as to what he would sell a vehicle for on the lot. *Id*. at 270-71. The Sixth Circuit has not established a uniform method.

As the party seeking redemption, the Debtor "bear[s] the burden of proving the appropriate redemption value by a preponderance of the evidence." *In re Herrera*, 454 B.R. 559, 561 (Bankr. E.D.N.Y. 2011) (citations omitted) (collecting cases holding debtor bears burden of proving value by preponderance of evidence for redemption purposes under § 722). Therefore, the Debtor here bore the evidentiary burden of proving that the replacement value of his vehicle was, more likely than not, $1,132, the amount he proposed to pay.

In this appeal, CNAC does not argue that the bankruptcy court used an improper method of valuing the Debtor's vehicle. Instead, CNAC asserts that the bankruptcy court erred by failing to hold an evidentiary hearing regarding the value of its collateral and by failing to specifically state the basis for its valuation either at the redemption hearing or in its written judgment. In support of its position, CNAC cites to Federal Rule of Bankruptcy Procedure 3012 and the Eleventh Circuit case of *Green Tree Acceptance, Inc. v. Calvert* (*In re Calvert*), 907 F.2d 1069 (11th Cir. 1990).

Bankruptcy Rule 3012 provides that "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct."

Fed. R. Bankr. P. 3012. The purpose of Rule 3012 is to ensure that a creditor who files a motion seeking a determination of its secured status and the value of its collateral pursuant to 11 U.S.C. § 506 is entitled to a hearing on those issues upon notice to other interested parties. "Rule 3012 does not, however, require a separate [valuation] hearing." *Piedmont Trust Bank v. Linkous* (*In re Linkous*), 141 B.R. 890, 894 (W.D. Va. 1992); *In re Taylor*, 289 B.R. 379, 386 n.5 (Bankr. N.D. Ind. 2003).[3] "Valuation issues may also arise in connection with other requests such as redemption under § 722," *Id.*, or confirmation of a plan. *Calvert*, 907 F.2d at 1072; *In re Hoskins*, 262 B.R. 693, 697 (Bankr. E.D. Mich. 2001).

In the case of *Calvert*, the Eleventh Circuit Court of Appeals held that Rule 3012 mandates that a bankruptcy court give "specific notice" to the holder of a secured claim that it will determine "the extent to which the claim is secured" at a particular hearing. *Calvert*, 907 F.2d at 1072. In *Calvert*, the bankruptcy court determined the value of the secured creditor's claim at a hearing on the debtors' motion to reconsider their bankruptcy plan. Although the secured creditor received notice of the hearing on the motion to reconsider, that notice did not include a "specific notice to . . . the holder of the secured claim, that [the bankruptcy court] would take up the collateral valuation issue." *Id.* The Eleventh Circuit concluded that this omission violated the requirements of Rule 3012.

CNAC's reliance upon Rule 3012 and *Calvert* in support of its position here is misguided. Although Rule 3012 provides an avenue for security valuation, neither Rule 3012 nor the holding in *Calvert* contain any requirement that a court conduct a *separate* evidentiary hearing when setting the value of collateral under § 506(a). *See Calvert*, 907 F.2d at 1072 ("Section 506(a) approves of holding this hearing in conjunction with the confirmation plan, as was done here; there is no

---

[3]CNAC did not request a *separate* evidentiary hearing regarding the vehicle's value or file a motion pursuant to Rule 3012 to initiate the process of determination of its secured status and value of its collateral. Having not raised the issue of a separate evidentiary hearing before the bankruptcy court or filed a motion for independent determination of the value of the vehicle, CNAC cannot now raise the issue on appeal. *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 357 (6th Cir. 2010) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.") (quoting *Hood v. Tenn. Student Assistance Corp.* (*In re Hood*), 319 F.3d 755, 760 (6th Cir. 2003)); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990)).

requirement of a separate hearing."). Instead, what is required is that the lienholder receive specific notice that the value of its claim is being determined at the relevant hearing.

The bankruptcy court in the case currently on appeal conducted a hearing on the Debtor's motion to redeem and CNAC's objection thereto in accordance with Federal Rule of Bankruptcy Procedure 6008. As is evidenced by both the certificate of service in the Debtor's redemption motion and the fact that CNAC filed an objection to that motion, CNAC received notice of the Debtor's motion to redeem the property. Implicit in a motion to redeem is the debtor's proposed valuation of the collateral. CNAC's objection to the Debtor's motion included an objection to the Debtor's proposed value of the vehicle. By virtue of the fact that CNAC filed the notice of hearing on April 29, 2011, and stated therein that a hearing on the Debtor's redemption motion would be held on June 6, 2011, it is abundantly clear that CNAC had adequate notice that the value of its claim and its collateral was to be determined at that hearing.

In its objection to the Debtor's redemption motion, CNAC did not object to the Debtor's Edmonds.com attachment nor did it provide any evidence of the value of the vehicle. Instead, CNAC simply insisted that the vehicle should be redeemed for the full amount owed on the debt. At the June 6, 2011 hearing, at which counsel for CNAC appeared, it again did not present any evidence regarding the value of the vehicle, but rather stated that the redemption amount should be the same as the outstanding loan.

The Debtor in this case submitted evidence as to the value of the vehicle with his motion to redeem. Although the bankruptcy court did not specify the exact sources it relied on in establishing the redemption value for the Dodge Neon, the bankruptcy court explained that it had reviewed the Debtor's Edmonds.com attachment as well as additional sources on its own and determined a value nearly identical to the number the Debtor proposed to pay, albeit slightly higher. CNAC presented no evidence of value nor did it object to the evidence submitted by the Debtor. Rather, it simply stated that the redemption value should be identical to the outstanding balance on the debt which is simply not the standard set forth under § 506(a)(2). The only evidence submitted by the parties came from the Debtor. Therefore, the Debtor met his burden of proof.

CNAC has failed to demonstrate how the bankruptcy court's failure to specifically detail the sources it looked to for valuation constitutes reversible error. A court's determination of value

pursuant to § 506(a)(2) is a question of fact which is within the bankruptcy court's discretion. *In re Scott*, 437 B.R. 168, 173 (Bankr. D.N.J. 2010). Such discretionary determinations are reviewed for an abuse of discretion. *Volvo Commercial Fin. LLC v. Volvo Gasel Transp. Lines, Inc.* (*In re Gasel Transp. Lines, Inc.*), 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005).

> An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard. A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. An abuse of discretion is defined as a definite and firm conviction that the [court below] committed a clear error of judgment. The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.

*Id.* at 685 (internal citations and quotation marks omitted); *First Merit N.A. v. Getz* (*In re Getz*), 242 B.R. 916, 920 (B.A.P. 6th Cir. 2000).

Pursuant to the Bankruptcy Rules, the filing of the motion to redeem is a contested matter under Federal Rule of Bankruptcy Procedure 9014. As a result, the court was required to make findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a), made applicable to contested matters in bankruptcy by Federal Rules of Bankruptcy Procedure 7052 and 9014. These findings and conclusions can be written or oral. The main requirement for these findings is that they "must be sufficient to enable a reviewing court to determine the factual basis for the court's ruling." *Veal v. Am. Home Mortgage Serv., Inc.* (*In re Veal*), 450 B.R. 897, 919 (B.A.P. 9th Cir. 2011). "This same standard applies in this Circuit even when the findings are based on documentary, rather than testimonial, evidence." *Brown v. UAW*, 689 F.2d 69, 71 (6th Cir. 1982).

In the case of *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693 (6th Cir. 1999), the Sixth Circuit Court of Appeals stated the standard used in reviewing a decision under Federal Rule of Civil Procedure 52:

> We have not interpreted [Rule] 52 to require trial courts to explicitly treat each issue raised. Rather, findings are to be liberally construed in support of a judgment, even if the findings are not as explicit or

detailed as might be desired. However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. And there must be sufficient findings of fact and conclusions of law to give an appellate court a clear understanding of the basis of the trial court's decision and enable it to determine the grounds on which the trial court reached its decision.

*Id.* at 710 (internal citations and quotation marks omitted). The Sixth Circuit further explained that:

The reviewing court oversteps the bounds of its duties under Rule 52 if it undertakes to duplicate the role of the lower court.... If the district court's account of the evidence is plausible in light of the *record viewed in its entirety*, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*United States v. Van den Bosch*, No. 85-5349, 1986 WL 17305, at *6 (6th Cir. 1986) (unpublished table decision) (emphasis added) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

In the case presently before the panel, the bankruptcy court stated that it had reviewed the figures submitted by the debtor and had investigated several sources on its own to arrive at the value of $1,400. This value was slightly higher than the Debtor's proposed redemption value of $1,132 which, according to the Edmonds.com printout presented by the Debtor, represented the private party sale value of the Neon. According to the Edmunds.com figures, dealer retail for the vehicle was $1,586. Although the bankruptcy court did not specify what other sources to which it looked to arrive at the $1,400 figure, it is clear from the record that it used its discretion to arrive at an approximate replacement value for the vehicle based on the exhibit submitted by the Debtor.

The only figures submitted by CNAC were statements by counsel that the debtor should be required to pay the entire amount due on the note, which is not warranted under § 506(a)(2), and that the Kelley Blue Book value was $3,570. However, CNAC did not submit any evidence of this purported Kelley Blue Book value. As a result, the record does not demonstrate that the court abused its discretion in determining the redemption value was $1,400. And, pursuant to Civil Rule 52(a), the bankruptcy court's determination of value is clearly based on the record presented to it by the

parties. There was no requirement for the bankruptcy court to state with any additional particularity the basis for its valuation determination.

## V. CONCLUSION

For the foregoing reasons, the Panel affirms the order of the bankruptcy court granting the Debtor's motion to redeem the vehicle for $1,400.