**In re Juan Carlos DE ANDA–RAMIREZ and Jennifer Nicole De Anda, also known as Jennifer Nicole Keegan, Debtors.**

**Midwest Regional Credit Union, Appellant,**

**v.**

**Juan Carlos De Anda–Ramirez, Jennifer Nicole De Anda, and William H. Griffin, Trustee, Appellees.**

**Nos. KS–06–086, 06–20892–13.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Jan. 29, 2007.

Dean D. Garland, Olathe, KS, for Appellant.

Kenneth M. Gay of Consumer Advocate, LLC, Lenexa, KS, for Appellees.

Before CLARK, CORNISH, and TALLMAN [1], Bankruptcy Judges.

HOWARD R. TALLMAN, Bankruptcy Judge.

Midwest Regional Credit Union ("Midwest") appeals an order of the United States Bankruptcy Court for the District of Kansas finding that the value of Juan Carlos De Anda–Ramirez and Jennifer Nicole De Anda's (the "Debtors") vehicle is

[1]. Honorable Howard R. Tallman, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

equal to the Kelley Blue Book ("KBB") private party value, not the KBB retail value. For the reasons set forth below, the decision of the bankruptcy court is AFFIRMED.

## I. BACKGROUND

Midwest had a purchase money security interest in the 2001 Ford Expedition (the "Vehicle") owned by the Debtors. The Debtors' Chapter 13 plan valued the Vehicle at $8,185, the KBB private party value. Midwest objected to confirmation of the plan on the ground that the appropriate value under § 506(a)(2) of Title 11 of the United States Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), was $13,680, the KBB retail value. The bankruptcy court overruled the objection and confirmed the plan with the private party value. The current appeal ensued.

## II. JURISDICTION

This Court, as an appellate court, has jurisdiction to hear appeals from "final judgments, orders, and decrees," unless a timely election to have the case transferred to the district court is made by one of the parties. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001-1. Failing to elect to have the case reviewed by the district court, the parties have consented to review of this case by this Court. 28 U.S.C. § 158(b) and (c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001-1.

## III. STANDARD OF REVIEW

■ "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Peterson Distrib., Inc.,* 82 F.3d 956, 959 (10th Cir.1996); Fed. R. Bankr.P. 7052(a). The proper means of valuing property is a question of law and is reviewed *de novo. Peterson,* 82 F.3d at 959. "The bankruptcy court's determination as to the value of the property is a factual finding." *In re Blankenship,* 258 B.R. 637, 645 (E.D.Va.2001). Consequently, the bankruptcy court's factual findings will not be disturbed unless this Court can clearly determine that such a finding was void of factual support.

## IV. DISCUSSION

**A. The bankruptcy court's finding that the proper valuation method for the Vehicle was the KBB private party price was not clearly erroneous.**

1. *Midwest's reliance on KBB retail value is misplaced.*

■ It is common practice among bankruptcy courts to use the KBB or National Automobile Dealers Association ("N.A.D.A.") values as a starting point in vehicle valuation. This practice has been approved by various appellate courts. In a case involving a pre-BAPCPA vehicle valuation, the Sixth Circuit Bankruptcy Appellate Panel stated, "[t]he Panel holds that the bankruptcy court's use of the average of N.A.D.A. wholesale and retail values as a starting point is consistent with [*Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) ] and that the value determined by the bankruptcy court is not clearly erroneous." *In re Getz,* 242 B.R. 916, 918 (6th Cir.BAP2000). *See also, Evabank v. Bax-*

*ter*, 278 B.R. 867, 876 (N.D.Ala.2002) (court may use "blue book" value as a starting point); *GMAC v. Valenti (In re Valenti)*, 105 F.3d 55, 62–63 (2nd Cir.1997). The core of the disagreement between the parties is the appropriate KBB value to assign to the Vehicle. The Debtors claim that the KBB private party value [2] is the most appropriate, whereas Midwest claims that the value should be the KBB retail. Under the BAPCPA revisions, the bankruptcy court now is charged with determining the "price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2). In its argument, both in its objection to confirmation and in the instant appeal, Midwest attempts to equate the required merchant retail value of section 506(a)(2) with the KBB retail value. "Suggested Retail Value" is a defined term:

> This value assumes the vehicle has received the cosmetic and/or mechanical reconditioning needed to qualify it as "Excellent." This is not a transaction value; it is representative of a dealer's asking price and the starting point for negotiation.

Kelley Blue Book (2007), http://www.kbb. com. "Excellent," as defined by KBB, means:

> that the vehicle looks new, is in excellent mechanical condition and needs no reconditioning. This vehicle has never had any paint or body work and is free of rust. The vehicle has a clean title history and will pass a smog and safety

inspection. The engine compartment is clean, with no fluid leaks and is free of any wear or visible defects. The vehicle also has complete and verifiable service records. Less than 5% of all used vehicles fall into this category.

Kelley Blue Book (2007), http://www.kbb. com.

Other than both containing the word "retail," the Code and KBB definitions have little in common. The Bankruptcy Code's definition of "retail" includes an adjustment for the age and condition of the vehicle; KBB defines "retail" as the price for a vehicle that is in "excellent condition" with the proviso that less than 5% of vehicles for sale qualify as "excellent." Clearly, these two are not equivalent and Midwest's reliance on the KBB retail value is misplaced.[3]

### 2. *Midwest failed to produce any evidence in support of its objection.*

■ Midwest did not present any evidence supporting its theory of valuation. While Midwest objected to the confirmation of the plan arguing that the appropriate value for the Vehicle was the KBB retail value based on the language of § 506(a)(2), it did not submit any evidence in support of its position. It seemed to rely on the assumption that "retail" has the same meaning regardless of context without presenting the bankruptcy court with any evidence to support that premise.

Midwest did not offer, or even attempt to offer, any evidence regarding the value of the Vehicle at the hearing. Instead,

---

**2.** "Private Party Value," as defined by KBB, "is what a buyer can expect to pay when buying a used car from a private party. The Private Party Value assumes the vehicle is sold 'As Is' and carries no warranty (other than the continuing factory warranty). The final sale price may vary depending on the vehicle's actual condition and local market conditions. This value may also be used to derive Fair Market Value for insurance and

vehicle donation purposes." Kelley Blue Book (2007), http://www.kbb.com.

**3.** The Court is not making a determination of the proper valuation procedure under revised Bankruptcy Code § 506(a)(2). It is clear that the KBB retail value was not appropriate in this case but that does not mean that it is never appropriate.

Midwest impliedly consented to the summary nature of the hearing; it did not attempt to present any evidence, nor did it request an evidentiary hearing. The only evidence before the bankruptcy court was the Debtors' statement in the plan that the Vehicle was worth $8,185 and that it had almost twice the normal mileage for a car of its age. In addition, the parties presented argument regarding the KBB values. There was nothing to indicate that the Vehicle was in excellent condition as required to qualify for the KBB retail value.

The bankruptcy court had to make a decision based on the information presented to it. The court was left to decide based on Midwest's argument, which it clearly did not find persuasive, and the Debtors' facts, which it clearly did find persuasive. Although it was a summary proceeding, the court discussed its reasoning for relying on the private party value instead of the retail value. The transcript of the hearing shows that the court made a reasoned decision that this Court cannot say is clearly erroneous.

**B. The bankruptcy court did not deny Midwest its constitutional right to due process of law.**

Finally, Midwest argues that the bankruptcy court violated its due process rights. The argument is not persuasive. Based on the record, Midwest received notice of the plan with an opportunity to object, and it did. Further, Midwest was given the opportunity to be heard by the bankruptcy court, and it was.

An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We have described "the root requirement" of the Due Process Clause

as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *see Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (footnote omitted). Midwest was given that hearing and it failed to persuade the bankruptcy court. Furthermore, Midwest did not request the opportunity to present witnesses or other evidence of value at a hearing. The bankruptcy court came to a decision supported by the evidence. An appeal does not give an appellant an opportunity to relitigate the matter.

**V. CONCLUSION**

For the reasons stated herein, the decision of the bankruptcy court to confirm the plan over Midwest's objection is AFFIRMED.