**In re Sandy M. ZAMBUTO, Debtor.**

**No. 09–37999 (MBK).**

United States Bankruptcy Court,
D. New Jersey.

Sept. 27, 2010.

consumer-owned trade-in. Galves suggests this value should be used among dealers when handling "as traded" vehicles. This is in contrast to its definition of "market ready value," which is defined as the value for an exceptional/reconditioned market-ready vehicle. Galves states that the "market ready value" may be more representative of an auction transaction or sale of a vehicle to an end-user dealer. Galves Auto Price List: American & Foreign Used Cars Edition (2010).

7. The Court is not persuaded by Mr. Graff's assertion that New Jersey car dealers exclusively rely on Galves. In fact, Mr. Graff himself testified that the Mid–Atlantic NADA Guide encompasses New Jersey. Transcript of Record at 119.

William H. Oilver, Jr., Esq., Brandywine Commons, Neptune, NJ, for Debtor, Sandy M. Zambuto.

John R. Morton, Jr., Esq., Moorestown, NJ, for J.P. Morgan Chase Bank, NA.

## OPINION

MICHAEL B. KAPLAN, Bankruptcy Judge.

## I.  INTRODUCTION

This matter comes before the Court on the Chapter 13 petition filed by the Debtor, Sandy Zambuto, in contemplation of approval of the Debtor's Plan of Confirmation, together with objections interposed by JP Morgan Chase Bank, NA. The principal issue before the Court is how to calculate the replacement value of a used vehicle for cramdown purposes, including the appropriate commercial valuation guides to be used.

For the reasons set forth below, the Court determines that retail value is the appropriate starting point in calculating replacement value for purposes of § 506(a)(2). Accordingly, the Court adopts the creditor's approach of starting with retail guides, specifically, the National Automobile Dealers Association ("NADA") Guide for retail value, less reconditioning

and repair costs. However, the Court finds the Debtor's expert's estimate of these repair costs more credible. In the case *sub judice*, the Court sets the retail value of the vehicle for purposes of § 506(a)(2) at $28,075 in consideration of the evidence presented.

## II.  PROCEDURAL   HISTORY   AND FACTS

The Debtor owns a 2005 Mercedes Benz S500 ("Vehicle") financed by JP Morgan Chase Bank, NA ("Chase"). The Vehicle has mileage of approximately 49,659. Chase holds a first purchase money security interest in the Vehicle as a result of a retail installment contract for $63,536.00 signed on October 17, 2006.

On October 21, 2009, the Debtor filed a petition under Chapter 13 of Title 11 of the United States Code. The Debtor's Chapter 13 Plan proposes to cram Chase's secured claim down to $20,000 plus interest payable at 4%. The Debtor achieves this valuation by starting with the value provided under Galves Auto Price List ("Galves"), and then deducting for perceived repairs and reconditioning.

On November 5, 2009, Chase filed an objection to the Confirmation of the Debtor's plan, arguing that the proposed cram down value of $20,000 did not reflect an accurate retail price for the purposes of § 506(a)(2). Rather, Chase asserts that the appropriate value of the Vehicle is $29,400. To achieve this value, Chase's appraiser relies on the NADA Guide and Kelley Blue Book retail values as starting point, and then deducts for age and condition of the Vehicle.

On June 11, 2010, the Court held a valuation hearing. Two experts, Robert Nolan and Don Graff, testified for the Debtor. Mr. Nolan has been in the used car business for 40 years and has owned

his own used car business since 1967. He is based in Monmouth County, New Jersey. He attends local car auctions once or twice a week throughout the State at which he obtains his inventory. Mr. Nolan testified that, to achieve the appraised value, he physically inspected the Vehicle and relied on his experience, along with the Galves range of values between $20,500 and $21,900, as well as various listings of similar Mercedes Benz vehicles for sale on Manheim Market Report for auction sales. Mr. Nolan then took additional deductions for door dent repair and detailing expenses, totaling $1,425, to reach the appraised value of $20,000.

The Debtor further relies on the expert testimony of Don Graff. Mr. Graff has been in the automotive business for 30 years. He has run major car dealerships and has been the internet sales director of two very large car companies, one of which has 14 dealerships and 29 brands. Mr. Graff testified that, in his experience in the automobile business in central New Jersey, New Jersey car dealers rely exclusively on Galves when appraising a car and that Edmunds Pricing Report ("Edmunds"), NADA, and Kelley Blue Book are not used for determining what a dealer will sell a car for in the New Jersey market. Instead, those guides are primarily use by car dealers for insurance and for banks.

Chase relied on the appraisal of Paul Runiewicz. Mr. Runiewicz has been a used car dealer, automobile purchasing agent, and appraiser for 43 years. He testified that he attends approximately three auto auctions per week. Mr. Runiewicz's appraisal is based upon a physical inspection of the Vehicle along with values from NADA of $31,100, Kelley Blue Book of $30,365, Edmunds of $27,752, as well as various listings of similar Mercedes Benz vehicles for sale on Auto Trader and Cars.com with retail prices ranging from $28,821 to $31,680. These values are for vehicles in excellent or "clean" condition.[1]

At the conclusion of the hearing, the Court took the matter under advisement and reserved decision. On August 25, 2010, the Court entered an Order confirming the Debtor's Chapter 13 plan, subject to the Court's ultimate determination of the Vehicle's value. After reviewing the post-hearing submissions and applicable law, the Court is prepared to rule.

## III. JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(b) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(L). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr.P. 7052.[2]

## IV. DISCUSSION

*A. Confirmation Requirements Under 11 U.S.C. § 1325*

▉ The Debtor's Chapter 13 plan may be confirmed if the plan satisfies one

---

1. NADA defines "clean condition" as a vehicle with "no mechanical defects [that] passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish; interior reflects minimal soiling and wear, with all equipment in completed working order. Vehicle has a clean title history; vehicle will need minimal reconditioning to be made ready for resale."

2. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

of the three requirements set forth in § 1325. § 1325 provides as follows:

"(a) Except as provided in subsection (b), the court shall confirm a plan if.... "(5) with respect to each allowed secured claim provided for by the plan (A) the holder of such claim has accepted the plan; (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or (C) the debtor surrenders the property securing such claim to such holder."

§ 1325(a)(5)(A–C). § 1325(a)(5)(B) is commonly known as the "cramdown" power, allowing a debtor to keep collateral and pay the present value of the allowed secured claim over the life of the plan. An individual debtor's ability to cramdown in Chapter 13 bankruptcies was discussed at length by the Supreme Court in *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). The *Rash* Court noted:

"Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral, see § 1325(a)(5)(B)(ii). The value of the allowed secured claim is governed by § 506(a) of the Code."

*Id.* at 957, 117 S.Ct. 1879.

#### B. Valuation Under 11 U.S.C. § 506(a)

11 U.S.C. § 506(a) governs the valuation of allowed claims in bankruptcy cases and is central to the resolution of this case. § 506(a)(1) states:

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property...."

11 U.S.C. § 506(a)(1).

11 U.S.C. § 506(a) was substantially amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). § 506(a)(2) was added and provides:

"If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, *replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined*."

§ 506(a)(2) (*emphasis added*).

▪ Prior to enactment of BAPCPA, the prevailing means of establishing the value of a vehicle was determined based on its replacement value. The Supreme Court in *Rash* defined replacement value as "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition." 520 U.S. at 959, n. 2,

117 S.Ct. 1879. However, the *Rash* Court noted that precise valuation would be determined by the Bankruptcy Courts on a case-by-case basis.[3]

■ Since the enactment of BAPCPA, most courts have interpreted the first sentence of § 506(a)(2) as codifying the Supreme Court's decision in *Rash. See In Re Morales*, 387 B.R. 36 (Bankr.C.D.Ca.2008). Additionally, the Third Circuit has endorsed the proposition that the BAPCPA amendments were meant to codify *Rash*, without significantly altering the discretion of the Bankruptcy Court. *See In Re Finnegan*, 358 B.R. 644, 648 (Bankr. M.D.Penn.2006). However, with respect to the second sentence of § 506(a)(2), the Bankruptcy courts have not established a uniform method of calculating the retail value of a vehicle or any other personal property. See *In Re De Anda–Ramirez*, 359 B.R. 794, 797, n. 3. (10th Cir. BAP 2007) (declining to establish a specific method for determining retail value). As a result, the task of calculating replacement value under the second sentence of § 506(a)(2) remains subject to a trial court's discretion, predicated on the unique condition of the redeemed property. *See In Re Brown*, 2006 WL 3692609 (Bankr. D.S.C., 2006).

### C. Other Courts and § 506(a)(2)

■ As the proper methodology for valuation of vehicles for cramdown purposes is an issue for which there is no controlling precedent within the Third Circuit, this Court seeks guidance from the other courts which have analyzed this question after the enactment of the post-BAPCPA version of § 506(a)(2). This Court primarily relies on and adopts the *Morales* Court's reasoning and approach to

§ 506(a)(2) valuation. 387 B.R. 36 (Bankr. C.D.Ca.2008). The *Morales* Court concluded that, "absent unusual circumstances, the retail value for vehicles under § 506(a)(2) should be calculated by adjusting either the Kelley Blue Book retail value or the [NADA] Guide retail value by a reasonable amount in light of evidence presented regarding condition, the retail market, and other relevant factors." 387 B.R. at 37.

To support this ruling, the *Morales* Court first notes that "[t]he plain language of [§ 506(a)(2)] contemplates 'the price a retail merchant would charge' instead of the price a private party [or wholesale merchant] would charge." *Id.* at 46. *See also Brown*, 2006 WL 3692609 at \*3 ("Given the language used in the second sentence of § 506(a)(2), it appears that a retail value or retail price is the appropriate standard by which to determine replacement value."). Beyond the statutory text, the *Morales* Court suggests that, unlike the wholesale value, the retail value takes into consideration the costs of sale, marketing, and the dealer's profit. As such, this value better approximates what a vehicle would actually sell for in the market. *Id.* at 46.

The *Morales* Court further reasons that although the post-BAPCPA statute states that replacement value should be calculated "without deduction for costs of sale or marketing," adjustments to retail value are necessary to approximate replacement value. *Id.* at 47; *Rash*, 520 U.S. at 959, n. 6, 117 S.Ct. 1879. Other Bankruptcy courts across the country support this reading. For example, the *De Anda–Ramirez* Court concludes that adjustment to the retail price provided by retail guides is neces-

---

**3.** "Our recognition that the replacement-value standard ... governs in cram down cases leaves to bankruptcy courts, as triers of fact,

identification of the best way of ascertaining replacement value on the basis of the evidence presented." *Id.* at 41.

sary because retail value is rarely equivalent to the retail value of § 506(a)(2). 359 B.R. at 797.[4] Accordingly, a downward adjustment from the guide retail value is necessary because few vehicles are maintained in the excellent or "clean" condition contemplated by the guide retail values. *Morales*, 387 B.R. at 46. Therefore, the guide retail value is only a starting point in determining retail value under the second sentence of § 506(a)(2), and should be adjusted routinely in light of the personal property's particular condition. *Id.*; *Brown*, 2006 WL 3692609 at *3.

### D. The Court Concludes that the Retail Value of the Vehicle is $28,075

In light of the above discussion, the Court will use the NADA retail value as the appropriate starting point for calculating retail value of the Vehicle under the second sentence of § 506(a)(2).[5] Testimony at the valuation hearing supports this Court's use of the NADA values. Mr. Graff, one of the Debtor's experts, testified that NADA is a regional guide that may be used in New Jersey. Specifically, he stated that New Jersey falls within the Mid–Atlantic region as defined by NADA. Transcript of Record at 119. Furthermore, Mr. Runiewicz, the creditor's appraiser, began his appraisal by consulting NADA. Transcript of Record at 65.

This Court's decision to use retail value as the starting point of valuation brings it into line with the emergent approach of most bankruptcy courts interpreting § 506(a)(2). *See In re Eddins*, 355 B.R. 849, 852 (Bankr.W.D.Okla.2006) ("The NADA retail value is established as a guide for debtors, creditors and their counsel, as a starting point for valuation of vehicles under § 506(a)(2)."); *In Re Carlson*, 2006 Bankr.LEXIS 4405, 2006 WL 4811331 (Bankr.W.D.Wash. Dec.8, 2006); *In re Cheatham*, 2007 Bankr.LEXIS 2758, 2007 WL 2428046 (Bankr.W.D.Mo. June 19, 2007); *In re Coleman*, 373 B.R. 907(Bankr.W.D.Mo.2007). Additionally, the use of a specific retail guide establishes a uniform approach to valuation and will provide greater consistency in the application of § 506(a)(2).

█ The Court finds that the Galves values are not an appropriate starting point for valuation for purposes of § 506(a)(2) because Galves is not a retail guide. To the contrary, Galves markets itself as the "Official Wholesale Guide." Galves Auto Price List: American & Foreign Used Cars Edition (2010). Moreover, the Galves website confirms that its listed values are trade-in values offered below wholesale. See *Galves Auto Price List* (Sept. 23, 2010), http://www.galves.com/t-

**4.** The *De Anda–Ramirez* Court notes the difference between the definition of retail value in the Code versus the definition of "retail" provided in the Kelley Blue Book. The Code definition includes an adjustment for the age and condition of the vehicle while the Kelley Blue Book "retail" value is for a vehicle in "excellent" condition. In this case, neither party has stated that the Vehicle's condition as of the petition date was "excellent."

**5.** This Court will use Mr. Runiewicz's, the creditor's appraiser, retail value of $29,500 as the appropriate starting point in this instance. Mr. Runiewicz began by consulting the NADA Guide then averaged the NADA, Kelley Blue

Book, and Edmunds values. The NADA Guide value as of the petition date was $31,100. The Court does not believe it fair to the Debtor to begin with a figure that is higher than the figure submitted by the creditor's appraiser. However, the Court does not find it appropriate to take an average of the retail guide values. Therefore, in the future, the Court will exclusively rely on the NADA Guide. Moreover, this Court's decision to use the NADA Guide retail values does not preclude other Bankruptcy courts from using other available **retail** guides as its starting point when determining appropriate retail value.

aboutus.aspx ("The Galves values are intentionally below what vehicles will sell for at auction, in order to allow dealers to absorb expenses related to selling the vehicles."). Profits and repairs must then be added to the below wholesale values.[6] However, the language of § 506(a)(2) explicitly provides that replacement value should reflect retail value of personal property on the date of bankruptcy. Therefore, because Debtor's appraisers used Galves trade-in listings as the starting point of their analyses, their opinions will not be taken as convincing evidence of replacement value. *See In Re Young*, 390 B.R. 480, 493.[7]

■ Finally, the Court must determine the reasonable adjustment to the NADA retail value in light of the Vehicle's age and condition as of the petition date. *See Morales*, 387 B.R. at 49. The parties have presented two different repair cost totals. On the one hand, the Debtor's appraiser testified that the Vehicle required $1,425 in repairs. This number is based on the following: $1,100 for a dent in the driver's door; $100 for exterior detailing; $150 for interior burn holes and worn spots; and, $75 for interior detailing. On the other hand, the creditor's appraiser deducted only $100 from the retail value to account for costs of dent repair. In light of the parties' respective testimony and submitted photographs, this figure seems substantially low. Therefore, the Court will use the Debtor's expert's estimate of cost

of repairs and reconditioning. However, in the future, this Court will use the NADA retail value as of the date of the filing of the petition as the starting point in calculating replacement value.

## V. CONCLUSION

For the foregoing reasons, the Court agrees with creditor's approach of starting with retail guides, less reconditioning and repair costs, when valuing vehicles under § 506(a)(2). However, the Court finds the creditor's estimate of repair costs is substantially low. Instead, the Court finds the debtor's repair cost estimate of $1,425 more credible. As such, the Court sets the retail value of the Vehicle for purposes of § 506(a)(2) at $28,075. Creditor is directed to submit a form of order.

---

6. The Galves Guide defines its values as follows: "Galves values should be considered current 'trade-in' values." Galves defines "trade-in" values as the actual cash value of a consumer-owned trade-in. Galves suggests this value should be used among dealers when handling "as traded" vehicles. This is in contrast to its definition of "market ready value," which is defined as the value for an exceptional/reconditioned market-ready vehicle. Galves states that the "market ready value" may be more representative of an auc-

tion transaction or sale of a vehicle to an end-user dealer. Galves Auto Price List: American & Foreign Used Cars Edition (2010).

7. The Court is not persuaded by Mr. Graff's assertion that New Jersey car dealers exclusively rely on Galves. In fact, Mr. Graff himself testified that the Mid–Atlantic NADA Guide encompasses New Jersey. Transcript of Record at 119.